Filed 8/20/20  In re Noah P. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re NOAH P., a Person Coming Under Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> N.P., <br><br> Defendant and Appellant. | B302224 <br><br> (Los Angeles County Super. Ct. No.19CCJP05681) |

APPEAL from orders of the Superior Court of Los Angeles County, Mary Kelly, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother appeals from the juvenile court's exercise of jurisdiction over her 16-month-old son based on an incident when mother's boyfriend and maternal aunt's ex-boyfriend exchanged gunshots in son's presence. Mother argues substantial evidence does not support the court's finding of neglect because her family was only "the victim of an unforeseeable criminal attack against them and [her] boyfriend acted in self-defense."

The Department of Children and Family Services (Department) cross-appeals from the juvenile court's disposition order. The Department argues the court erred in ordering informal supervision for mother under Welfare & Institutions Code section 360, subdivision (b) because the evidence established mother had not followed through with the services already offered by the Department.[1] We find the court's jurisdiction order is supported by substantial evidence, and the court did not abuse its discretion in ordering informal supervision. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 26, 2019, the sheriff's department reported to the Department that mother's boyfriend (boyfriend) and maternal aunt's ex-boyfriend (Gerardo) had fired shots at each other while son was present. A social worker interviewed mother, who was 18 years old and had previously been a dependent of the juvenile court. Mother said that on the day of the incident, she had seen

---

[1] Under section 360, subdivision (b), "the court may, without adjudicating the child a dependent, order that services be provided to keep the family together under the informal supervision of the child welfare agency." (*In re N.M.* (2011) 197 Cal.App.4th 159, 171.)

All further statutory references are to the Welfare and Institutions Code.

2

Gerardo drive by their home holding a gun. Mother knew that Gerardo was angry with maternal aunt and had been "stalking her." According to mother, Gerardo was a gang member and the police were looking for him. When she saw Gerardo drive by with a gun she called the police, but then hung up because the police were "asking too many questions." Mother then drove to the cemetery with maternal aunt, boyfriend, and son.

When they arrived at the cemetery, Gerardo drove up and said to mother, "I'm strapped up!" displaying his gun. He then drove off. Mother wanted to leave the cemetery immediately but deferred to boyfriend and maternal aunt who wanted to stay. Forty minutes later, Gerardo drove back and fired shots at them. No one was injured. Mother denied that boyfriend had shot back at Gerardo or that he was affiliated with a gang. Mother told the social worker that boyfriend did not have a criminal history.

Maternal aunt told the police that, after Gerardo shot at them, she saw boyfriend pull out a semi-automatic handgun and return fire as Gerardo drove away. Boyfriend said, "I shot back, I shot back!" When law enforcement arrived at the scene of the shooting, they found shell casings on the ground where boyfriend had been standing. A bystander also reported to the police that he had observed two men shooting at each other. From this evidence, the police concluded some of the shots were fired from boyfriend's location.[2] According to police records, both Gerardo

---

[2] The District Attorney chose not to file criminal charges against boyfriend, presumably because boyfriend had a viable claim of self-defense. This discretionary decision by the District Attorney does not undermine the sufficiency of evidence to support a jurisdictional finding in a dependency case where the burden of proof is preponderance of the evidence.

and boyfriend were East LA gang members. Boyfriend was on probation for carrying a loaded firearm in a public place.

Two weeks later, on August 9, 2019, the social worker spoke with mother again. Mother again denied boyfriend had a criminal history, but when pressed, admitted he had " 'a gun charge for 2016.' " The social worker advised mother to consider the risk posed by boyfriend "given the prior history related to weapons and recent incident involving him shooting" at Gerardo. However, mother subsequently allowed boyfriend to move in with her and son.

On September 3, 2019, the Department filed a petition under section 300, subdivision (b). The petition alleged that mother had endangered son by placing him in the middle of a shooting. Mother "knew or reasonably should have known that the male companion possessed a firearm and the mother allowed the male companion unlimited access to the child." At the detention hearing on September 4, 2019, the juvenile court found a prima facie case that son was a person described by section 300. Son was released to mother's custody. Later that month, boyfriend was arrested for assault with a firearm.[3]

The jurisdiction hearing was held on November 5, 2019. In the jurisdiction report, the Department noted that mother had expressed willingness to cooperate with the Department and had cooperated with interviews. However, the Department concluded the future risk of neglect of son was high based on the shooting incident as well as mother's decision to allow boyfriend to move in to the family home. At the jurisdiction hearing, the court found there was a current risk of harm, and sustained the allegation under section 300, subdivision (b)(1). The court ordered the

---

[3] The prosecution did not file charges against boyfriend.

4

Department to provide family maintenance services to mother under section 360, subdivision (b). Mother was ordered to participate in a parenting program and individual counseling. She timely appealed, and the Department timely filed a notice of cross-appeal.

## *DISCUSSION*

### 1. *Substantial Evidence Supports the Court's Jurisdiction Finding*

A child comes within the jurisdiction of the juvenile court under subdivision (b)(1) of section 300 if, as is relevant here, he "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." " 'In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633 (*R.T.*).) We " 'draw all reasonable inferences from the evidence to support the findings and orders of the [juvenile] court' " and " 'review the record in the light most favorable to the court's determinations.' " (*Ibid.*)

In challenging the court's jurisdiction finding, mother first argues there is no evidence she "knew or should have known that [son] would be at risk of harm from this type of attack" which she describes as "unforeseeable." However, the record shows that mother herself understood the risk Gerardo posed and anticipated the danger. Before mother went to the cemetery, she saw Gerardo, a known gang member wanted by the police, driving by her home with a gun in his hand. She knew he was angry with maternal aunt and had been stalking her. Mother was sufficiently alarmed that she called the police, although she

5

then hung up when the police started asking questions. At the cemetery later that day, Gerardo flashed his gun to mother in a threatening manner. Mother wanted to leave at that point, which suggests she was aware that Gerardo might return—which he did—but she stayed to please maternal aunt and boyfriend. This record suggested that mother knew that Gerardo might shoot at them when she chose to stay at the cemetery that day.

Mother is correct that the "mere possession of a firearm by an adult does not present a risk of harm to a child ipso facto." Mother claims *In re C.V.* (2017) 15 Cal.App.5th 566 is instructive. We are of a different mind. In *In re C.V.*, the father was arrested at the mother's house and the police found an unloaded firearm and ammunition in a backpack in the bedroom where the parents slept with the child. (*Id.* at p. 568.) The Court of Appeal reversed a jurisdictional finding over the child, concluding that the "father's admitted gang membership and his possession of the firearm" did not constitute substantial evidence of a risk of gang retaliation or shoot-outs occurring in the home. (*Id.* at p. 573.) Here, by contrast, there was additional evidence that boyfriend presented the risk of gun violence occurring. Boyfriend was on probation for carrying a loaded firearm in public, he carried a loaded handgun with him on an outing with son, he refused to leave the cemetery when Gerardo came by the first time and convinced mother not to leave, and he fired shots at a retreating gang member while son was present.

Lastly, mother argues there was no evidence showing son remained at substantial risk of harm at the time of the jurisdiction hearing, which took place several months after the shooting. We ask only if the juvenile court's finding was supported by substantial evidence, and the evidence established

6

that child was at risk and mother remained in denial of the danger posed by boyfriend. Mother continued to deny that boyfriend had fired shots at Gerardo despite contrary reports by maternal aunt and a bystander, as well as law enforcement's conclusion based on shell casings found at the scene. Mother also consistently claimed that boyfriend did not have a gun despite overwhelming evidence to the contrary including a prior arrest for assault with a firearm weeks before the jurisdiction hearing. She also denied that boyfriend was a gang member, although the dependency court could have found otherwise based on the police report. Mother's denial of boyfriend's violent lifestyle was paired with her failure to take any steps to limit boyfriend's contact with son. Finally, mother's inconsistent reports to the Department made her both an unreliable witness and a parent in denial. This was substantial evidence son remained at risk of harm at the time of the jurisdiction hearing. (*In re A.F.* (2016) 3 Cal.App.5th 283, 294 ["denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision"].)

**2.      *The Court Did Not Abuse its Discretion in Ordering Informal Supervision***

In its cross-appeal, the Department argues the juvenile court abused its discretion when it ordered informal supervision under section 360, subdivision (b) because mother showed she was not willing to work with the Department informally. We find no error.

"Once the juvenile court finds jurisdiction under section 300, it must adjudicate the child a dependent unless the severity of the case warrants nothing more than Agency's supervision of family maintenance services. Under section 360, subdivision (b),

7

if appropriate, the court may, without adjudicating the child a dependent, order that services be provided to keep the family together under the informal supervision of the child welfare agency. (§§ 360, subd. (b), 301; Cal. Rules of Court, rule 5.695(a)(2).)"[4] (*In re N.M., supra,* 197 Cal.App.4th at p. 171.)

"Whether to exercise this option under section 360, subdivision (b), is a discretionary call for the juvenile court to make; it may opt to do so, but it need not. 'The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion.' [Citation.] As an appellate court, we cannot reverse the court's dispositional order absent a clear abuse of discretion. [Citation.] The appropriate test is whether the court exceeded the bounds of reason. [Citation.]" (*In re N.M., supra,* 197 Cal.App.4th at p. 171.)

Our resolution of this issue is largely a function of the abuse of discretion standard. The Department argues that mother demonstrated her unwillingness to cooperate when she refused to drug test, did not make herself available for therapy assessment, and allowed boyfriend to move in to her home. Although the Department was critical of her choices, the dependency court was not so unforgiving. The dependency court

---

[4] Section 360 states: "After receiving and considering the evidence on the proper disposition of the case, the juvenile court may enter judgment as follows . . . [¶] (b) If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301."

8

reasonably could have concluded that mother's behavior did not represent an unalterable refusal to comply with family maintenance services.

The Department also points to mother's about-face as to drug testing. Mother initially told the Department she was willing to drug test if asked by the Department. The Department arranged for a drug testing appointment, but mother did not keep the appointment. She later informed the Department she had changed her mind and "would not be drug testing at all." With these facts in mind, at the jurisdiction hearing, the court declined to order drug testing on the ground there was not "any evidence that mother's taking drugs." As the record did not indicate that drugs were a contributing factor to mother's neglect of son, the dependency could reasonably have concluded that mother's decision should not treated adversely.

The Department also cites to (1) mother's failure to "undergo an Upfront Assessment" despite expressing willingness to participate in mental health services, and (2) her decision to allow boyfriend to move in despite the Department's advice that she limit her contact with him. The Department argues that these actions "showed she was not willing to work with [the Department] informally."

At bottom, early on in the case, mother did not always follow the Department's recommendations. The dependency court was tasked with one of those quintessential judgment calls: Was mother of the mind to cooperate with the Department during its six months of supervision under section 360, subdivision (b)? The Department points to several facts suggesting she may not have been. The juvenile court apparently found that a different picture was presented in the jurisdiction report—mother had

cooperated with interviews, and had expressed willingness to participate in services.  The court found in mother's favor on this point, and did not abuse its discretion in doing so.

### *DISPOSITION*

The juvenile court's orders are affirmed.

                                            RUBIN, P. J.

WE CONCUR:


BAKER, J.


MOOR, J.

10