Filed 6/3/21  In re C.B. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.B., a Person Coming Under the Juvenile Court Law. | B308236 (Consolidated with B309531) (Los Angeles County Super. Ct. No. 20CCJP01010A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. C.B., Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County.  Stephen C. Marpet, Judge Pro Tempore.  Affirmed in part and remanded with directions.

Lisa A. Raneri, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

After a two-year-old's father struck his mother so hard she fell to the ground, the juvenile court exerted dependency jurisdiction over the child, removed him from father's custody, and terminated its jurisdiction with an "exit order" granting mother full legal and physical custody of the child.  On appeal, father challenges one of the two bases for dependency jurisdiction and asks that the exit order be modified to conform to the juvenile court's oral pronouncement.  Although father's second argument has merit, his first does not.  We accordingly affirm the juvenile court's rulings but remand for the court to modify the exit order.

**FACTS AND PROCEDURAL BACKGROUND**

I.      **Facts**

L.L. (mother) and C.P.B. (father) are the unmarried parents of C.B., who was born in September 2018.

On January 14, 2020, father and mother got into a verbal argument in their residence.  During that argument and in prior arguments, father had "tend[ed] to directly and indirectly threaten" mother.  When mother decided to leave with C.B.,

2

father followed her outside to her car. After mother finished buckling C.B. into his infant car seat, father struck mother with his hand so hard that she fell to the ground, felt dizzy and had an aching jaw for two days. Fearing that the violence might escalate, mother and C.B. left and spent the night in a hotel.

The next day, father picked up C.B. from daycare. When daycare employees expressed concern that he—and not mother— was picking up C.B., he threatened to run them over with his car. They stepped back, and father drove away.

Mother called the police, and at that time reported father's violence from the day before. She also informed the police that there had been two prior domestic violence incidents with father.

Although father returned C.B. to the daycare facility the next morning, mother decided to move with C.B. to her mother's house. A few days later, mother allowed father to take C.B. for a few hours. But father took C.B. to New York without telling mother. Father thereafter allowed mother to "Facetime" with C.B., and let her retrieve C.B. approximately 10 days later. Father was interviewed by New York's child services department, who reported that father would "throw fits" and "get very upset and then within seconds . . . apologize."

Mother thereafter moved to an undisclosed location, and father began a campaign of harassing mother, mother's pastor, and the maternal grandmother to try to learn where mother and C.B. were living. Mother was concerned that father was "acting very out of control." On at least one occasion, father told mother, "If I can't have [C.B.], then you won't have him" either.

II.    **Procedural Background**

On February 20, 2020, the Los Angeles County Department of Children and Family Services (the Department) filed a petition

3

asking the trial court to exert dependency jurisdiction over C.B. due to the parents' "history of engaging in violent altercation[s] in the presence of the child," which included the January 14 incident as well as "prior occasions" and which placed C.B. "at risk of serious physical harm, danger and damage." Based on the same allegations, the petition alleged that jurisdiction was appropriate on two grounds: (1) this conduct created a "substantial risk that the child will suffer[] serious physical harm inflicted nonaccidentally upon the child by the child's parent" (under subdivision (a) of Welfare and Institutions Code section 300)[1] and (2) this conduct amounted to a "failure or inability of [the parents] to adequately . . . protect the child" that placed C.B. "at substantial risk of serious physical harm" (under subdivision (b)(1) of section 300).

Mother sought and obtained a one-year restraining order requiring father to stay away from her and C.B. except during supervised visits.[2]

In subsequent interviews, mother told the Department that the January 14 incident had been the *only* domestic violence incident with father. Father told the Department that the January 14 incident never happened and that he had *never* assaulted mother. Father instead branded mother as "the devil," and made inconsistent statements that she assaulted *him* and that she never assaulted him.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     Father appealed the restraining order. (*In re C.B.*, No. B306832.) However, father's appellate counsel filed an *In re Phoenix H.* brief, and we subsequently dismissed that appeal.

4

The juvenile court held the jurisdictional and disposition hearing on October 9, 2020.  At the hearing, the court sustained jurisdiction on both grounds, explaining that the January 14 incident was "part of a whole history of disputes between the parents"; that this history included father's threats to mother as well as taking the child to New York without mother's knowledge or consent; and that "all of these things are part of" father's attempt to "control" mother and are hence a type of "domestic violence."[3]  The court removed C.B. from father and placed him with mother, but granted father the right to have monitored visits.  The court then terminated jurisdiction and ordered that an "exit order" be prepared that (1) awarded mother sole physical and legal custody of C.B., and (2) required father to complete "a 52-week [domestic violence] class for perpetrators," to attend parenting classes, and to participate in individual counseling.

On October 15, 2020, father filed a timely notice of appeal.

On October 16, 2020, father asked the juvenile court to rehear its jurisdictional ruling.  That request was denied on October 22, 2020.[4]

On October 19, 2020, the juvenile court signed a written exit order that included two requirements *not* in its oral ruling—namely, that (1) father's individual counseling be with "a licensed therapist," and (2) father participate in "mental health counseling to include . . . a psychological assessment [and] psychiatric evaluation, and [to] take all prescribed medications."

---

[3]    The court struck the language from the petition that had alleged that mother had struck father.

[4]    Father filed a notice of appeal from this denial.  (*In re C.B.*, No. B309531.)  We consolidated the two extant appeals.

5

## DISCUSSION

On appeal, father raises two arguments: (1) the juvenile court's order sustaining dependency jurisdiction under subdivision (a) of section 300 is not supported by substantial evidence, and (2) the juvenile court's exit order must be amended to delete the requirements not set forth in the court's oral pronouncement. The Department effectively concedes father is entitled to relief on his second argument, and we agree: A court's oral pronouncements generally control over its written orders (*In re A.C.* (2011) 197 Cal.App.4th 796, 799-800), and here the exit order is different from the court's oral pronouncements. We accordingly order the court to amend the exit order. This leaves us with father's challenge to the court's jurisdictional ruling.

Among other grounds, a juvenile court may exert dependency jurisdiction over a child if (1) "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent" (§ 300, subd. (a)), or (2) "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child (§ 300, subd. (b)(1)). Exposing a child to domestic violence can risk the nonaccidental infliction of serious physical injury under subdivision (a) of section 300 (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598-599 (*Giovanni F.*)), and can constitute a failure to protect a child from the risk of such injury under subdivision (b) (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194). Because dependency jurisdiction turns on the risk to the child ""at the time of the [jurisdictional] hearing"" (*In re M.M.* (2015) 240 Cal.App.4th 703, 719 (*M.M.*)), the

6

propriety of jurisdiction due to a child's exposure to domestic violence under subdivisions (a) and (b) of section 300 turns on whether "the violence is ongoing or likely to continue." (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 (*Daisy H.*); *In re M.W.* (2015) 238 Cal.App.4th 1444, 1453-1454.) We review the juvenile court's factual findings regarding risk, like all of its factual findings, for substantial evidence. (*M.M.,* at pp. 719-720.) This means we view the evidence in the light most favorable to the juvenile court's findings. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384, superseded by statute on other grounds as stated in *In re A.M.* (2020) 47 Cal.App.5th 303, 322.)

## I.     Justiciability

A single basis for dependency jurisdiction is enough to support the exertion of jurisdiction over a child. (*In re A.F.* (2016) 3 Cal.App.5th 283, 289.) As a result, father's challenge to only one of the two bases for jurisdiction over C.B. is generally not justiciable because the juvenile court's jurisdiction will remain valid by virtue of the unchallenged basis no matter what we decide on this appeal regarding the challenged basis. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.) This is particularly true where, as here, the factual allegations underlying both bases for jurisdiction are identical. Father responds that there is a "sharp distinction" between subdivisions (a) and (b)(1) of section 300, and that he will suffer a greater stigma in the future by virtue of being found under subdivision (a) to have put C.B. at risk of "nonaccidentally" inflicting harm, but the cases he cites do not support that proposition. Moreover, the stigma father might face in the future would appear to arise from his *conduct* in intentionally threatening and striking mother, and this conduct—and hence

the stigma—is the same whether dependency jurisdiction is sustained under both subdivisions (a) and (b)(1), or instead just subdivision (b)(1); father's assertion of greater stigma is, in our view, too speculative to give rise to a justiciable issue. (See *In re I.A.*, at pp. 1494-1495.) For sake of completeness, however, we will nevertheless reach the merits of father's jurisdictional challenge.

## II. Merits

Substantial evidence supports the juvenile court's jurisdictional finding under subdivision (a). As noted above, a child's exposure to domestic violence can risk the nonaccidental infliction of serious physical injury (*Giovanni F.*, *supra*, 184 Cal.App.4th at pp. 598-599), and father on appeal does not dispute that he struck mother during the January 14 incident. Thus, the propriety of jurisdiction under subdivision (a) in this case comes down to whether substantial evidence supports the juvenile court's finding that "the violence is ongoing or likely to continue." (*Daisy H.*, *supra*, 192 Cal.App.4th at p. 717.)

Substantial evidence supports the juvenile court's finding that domestic violence between father and mother is "ongoing or likely to continue." To begin, father effectively concedes as much by not challenging the court's jurisdictional finding under subdivision (b)(1): If there is evidence of continued violence sufficient to support jurisdiction under subdivision (b)(1), the same is true for subdivision (a), which requires the same substantial risk of serious physical harm and thus the same showing that the domestic violence is "ongoing or likely to continue." Further, the evidence shows as much. Mother told the police that the January 14 incident was the parents' *third* domestic violence incident, not their first. Although mother

8

repeatedly disclaimed any prior incidents in subsequent interviews with Department personnel, it is for the juvenile court to decide which of mother's statements to believe—we cannot gainsay its credibility findings. (E.g., *In re Alexandria P.* (2014) 228 Cal.App.4th 1322, 1352.) Father asserts that the record contains no "detail" about the prior incidents, including whether he and mother were in proximity to C.B., but what matters is whether the risk of domestic violence is "ongoing or likely to continue"—and that risk is a function of how mother and father interact, regardless of whether C.B. happened to be nearby when those prior interactions resulted in domestic violence. Mother's admission to the two prior incidents therefore contains sufficient detail to assess future risk. However, even if we accept mother's later statements that the January 14 incident was the only incident that boiled over into a physical altercation, there is substantial evidence that the proverbial water had been just under a boil prior to the incident and remains so today: Father had "tend[ed] to directly and indirectly threaten" mother prior to the incident; he threatened to run down daycare workers in his car if they did not allow him to leave with C.B. the day after the incident; he repeatedly called mother's contacts to try to learn mother's whereabouts after the incident; and he continues to refer to mother as "the devil." What is more, father refuses to acknowledge that he physically assaulted mother during the January 14 incident; minimization and denial are evidence of continued risk. (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision"].)

9

Father effectively responds that his single incident of physical violence with mother is insufficient to support a finding of jurisdiction under subdivision (a), making this case more akin to *Daisy H.*, *supra*, 192 Cal.App.4th 713, and involves far less egregious violence than the violence found sufficient to uphold jurisdiction in *Giovanni F.*, *supra*, 184 Cal.App.4th at 594, in *In re M.M.*, *supra*, 240 Cal.App.4th 703, and in *In re Nathan E.* (2021) 61 Cal.App.5th 114 (*Nathan E.*). Contrary to what defendant implies, however, *Daisy H.*, *Giovanni F.*, *M.M.*, and *Nathan E.* are not dispositive here. *Daisy H.* involved a single incident that occurred two to seven years prior to the filing of the dependency petition (*Daisy H.*, at p. 717); here, the petition was filed five weeks after the January 14 incident and father continues to call mother "the devil," to make efforts to find her, and to deny the incident occurred at all. And while *Giovanni F.* involved three years of violence that culminated in a punching and choking incident in a moving vehicle (*Giovanni F.*, at p. 597), *M.M.* involved a severe incident of violence between the parents while the child was at their feet that capped off a long history of such violence (*M.M.*, at pp. 706, 720), and *Nathan E.* involved an incident of violence between the parents with a child in the room that was a culmination of several prior incidents (*Nathan E.*, at pp. 117-120), *Giovanni*, *M.M.*, and *Nathan E.* did not purport to set the floor for jurisdiction under subdivision (a) of section 300.

**DISPOSITION**

The juvenile court is ordered to modify the "exit order" to delete the references to (1) father's individual counseling needing to be with "a licensed therapist," and (2) father's participation in "mental health counseling to include . . . a psychological assessment [and] psychiatric evaluation, and [to] take all prescribed medications."  Except as modified, the juvenile court's findings and orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ