Filed 6/23/21  In re R.A. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.A. et al., Persons Coming Under the Juvenile Court Law. | B307323 (Los Angeles County Super. Ct. No. 20CCJP01983A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. RHANISHA B., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Rhanisha B. (mother) appeals from orders establishing dependency jurisdiction over her daughters, R.A. (born 2013) and M.B. (born 2017), and removing them from her custody. Mother contends there was insufficient evidence to support the juvenile court's jurisdictional findings under Welfare and Institutions Code section 300, subdivisions (a) and (b)[1] that domestic violence between her and M.B.'s father, Michael G. (father), and mother's failure to protect the children endangered their physical health and safety and placed them at risk of harm.

We affirm the juvenile court's orders.

## BACKGROUND

### Detention and section 300 petition

The Los Angeles County Department of Children and Family Services (the Department) received a referral on February 11, 2020, concerning an incident of domestic violence at the corner of 11th and Vernon Avenues. The reporting party stated that father had punched and strangled mother and pushed her into the street while a child in a stroller nearby was crying and screaming.

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

Responding law enforcement officers reported that mother was shaking, crying, and limping.  Father had fled the scene.  Mother told the officers that father had been absent for five days, and she had gone outside to confront him about his infidelity.  Father responded by pinning mother against a wall and strangling her for two to three minutes so that she had difficulty breathing.  Father then punched mother in the face four or five times and forcefully pushed her into the street, where she narrowly missed being struck by a vehicle.  Mother suffered bruising and swelling on her left eyelid, swelling on her left ankle, and an abrasion on her left elbow.

A Department social worker interviewed mother at her home on February 19, 2020.  Mother had a cast on her foot and was using crutches.  She denied any criminal, substance abuse, domestic violence, or child welfare history.  Mother also denied the February 11, 2020 domestic violence incident with father and claimed she and father had simply argued.  She said neither R.A. nor M.B. was present during the incident.

Mother declined to identify or provide contact information for R.A.'s father.  She identified father as M.B.'s father and said he did not live in the home but visited on occasion and sometimes stayed overnight.  Mother said M.B. was born with a clubbed right foot and is missing the middle and ring fingers on her right hand.

The social worker interviewed R.A. with mother's consent and in mother's presence.  R.A. denied witnessing any physical altercations between mother and father.  Neither R.A. nor M.B. had any marks or other indications of physical abuse or neglect.

The social worker also interviewed father, who was in the home at the time.  Father denied any domestic violence with

mother and denied the February 11, 2020 incident. He said he did not live in the home but visited occasionally with M.B. and sometimes spent the night.

The social worker returned to the home on April 6, 2020, with a removal warrant for the children. Mother said the children were with the maternal grandmother. From the front door, the social worker observed a man entering the home's bedroom. Mother initially denied that father was in the home but later admitted that father was present. Father declined to be interviewed. Mother again denied any domestic violence with father. She became irate when served with the removal warrant and asked the social worker to leave the home.

In a March 17, 2020 telephone interview, the maternal grandmother told the social worker she had no concerns for the safety of the children. She denied witnessing any physical altercations between mother and father. The maternal grandmother confirmed that the children were staying in her home.

On April 8, 2020, the Department filed a petition under section 300, subdivisions (a) and (b) alleging that R.A. and M.B. were at risk of serious physical harm because of ongoing domestic violence between mother and father and mother's failure to protect the children.

Neither mother nor father was present at the April 13, 2020 hearing at which the juvenile court ordered M.B. and R.A. detained in shelter care. The court accorded mother monitored visits, not to take place together with father.

Mother appeared at the June 24, 2020 arraignment hearing and denied the allegations of the petition. The juvenile court

found father to be M.B.'s presumed father and Timothy A. to be R.A.'s presumed father.

Mother claimed neither R.A. nor M.B. was present during the February 11, 2020 incident with father and that she had been babysitting another child that day. The juvenile court denied mother's request to release the children to her. The court ordered R.A. removed from mother and released to Timothy under the Department's supervision and M.B. removed from both mother and father and placed in the Department's care. Mother and father were accorded monitored visits, not to take place together.

**Jurisdiction and disposition**

The Department's July 2020 jurisdiction/disposition report included a summary of the family's child welfare history. An October 2019 referral alleged that father had used a bat to hit mother in the face several times while the children were present. That allegation was closed as inconclusive.

A December 2017 referral reported that R.A. was hospitalized for head trauma and facial fractures after being struck by a car. The incident was determined to be an accident caused by R.A.'s aunt inadvertently backing a car into the child. The same referral included an allegation that M.B. had been hospitalized for a respiratory infection and failure to thrive. That allegation was closed as unfounded.

A 2013 referral alleged that mother and R.A. had both tested positive for marijuana. The allegation was substantiated, and mother received voluntary family maintenance services from January 2014 to August 2014.

Both mother and father had criminal histories. Mother's criminal history included disorderly conduct, prostitution, and loitering with intent to prostitute. Father's criminal history

included battery, inflicting corporal injury on a spouse, and presenting false identification to peace officers.

R.A., who had been with Timothy for an extended visit, was now in the same foster home as M.B. In an April 29, 2020 interview, R.A. told the social worker that mother and father "both fight." When asked whether they fight with words or their bodies, R.A. responded, "with their bodies."

The children's caregiver reported that R.A. was engaging in sexualized behaviors and that the child disclosed she had been sexually molested by a maternal cousin. The maternal aunt and the maternal grandmother denied any sexualized behavior or sexual contact involving the children. They claimed R.A. had fabricated the account. Mother told the social worker that she believed R.A.'s disclosure and that she did not want the children placed with the maternal aunt.

R.A.'s father, Timothy, told the social worker in an April 29, 2020 telephone interview that he and mother had been separated for five years. He had no knowledge of mother's relationship with father. Timothy was having regular telephonic and video visits with R.A. R.A.'s caregiver reported that Timothy was attentive and appeared to share a strong bond with the child.

Mother continued to deny the domestic violence allegations. She claimed she had injured her foot in February during a physical altercation with another woman. Mother denied that father had choked her. She insisted that a restraining order against him was unnecessary. When the dependency investigator informed mother that R.A. had reported witnessing physical altercations between mother and father, mother claimed R.A. had been coached.

Mother had regular telephone and FaceTime visits with the children. The caregiver reported that during one video visit, mother told M.B., "Daddy wants to see you," and an unidentified male appeared on the screen.

Father was in custody in May 2020 for violating his probation. He denied physically assaulting mother in February and claimed mother had injured her foot while fighting with another woman. Father admitted that M.B. was present during that altercation. Father said he and mother sometimes argued in the presence of the children, but he denied any physical altercations.

The maternal grandmother told the dependency investigator during a May 19, 2020 telephonic interview that she went to assist mother after the February 11, 2020 incident and observed mother limping. She said M.B. was present during the incident but R.A. was in school at the time. The maternal grandmother said father was not welcome in her home. She said father had once entered her home uninvited and set fire to clothing he believed belonged to mother.

In a "Last Minute Information for the Court" filed in July 2020, the Department reported that criminal charges had been filed against father for the February 11, 2020 domestic violence incident against mother. Police records showed a pattern of domestic violence between mother and father. An October 2019 police report indicated that father had beat mother with a baseball bat. R.A. was present and screamed at father to stop. Father told mother, "I'm going to kill you tonight," and then fled the scene. Mother suffered a laceration on her left check and a raised bump on her head. Another incident of domestic violence occurred on May 13, 2020, approximately one month after the

children were removed from mother's custody. Mother vandalized father's car by hitting the car windows. Father approached with a bat in his hand and hit mother on her leg and on her hand. He fled when mother screamed and called 911. Responding officers observed a contusion on mother's right hand, and mother complained of pain in her leg.

Mother told the social worker in June 2020 that she did not understand why the children could not be returned to her, as father was incarcerated. She continued to deny any domestic violence. Mother pointed out that although she had called 911 on multiple occasions, she had never pressed charges against father.

In July 2020, mother informed the Department that she had completed online classes and again requested return of the children to her. The Department would not approve the online domestic violence program mother had completed, because she was unable to provide any details about the program. The Department similarly disapproved an online parenting program mother had completed, because the program's Web site expressly stated that it was not recommended for families with a history of domestic violence.

The juvenile court released R.A. to Timothy's custody on July 7, 2020. The following month the Department reported that R.A. was doing well in Timothy's home and enjoyed living with him. R.A. reported that during her most recent visit with mother, the maternal grandmother and mother "had a fight," which made R.A. sad.

**Jurisdiction and disposition hearing**

At the combined jurisdiction and disposition hearing held on August 24, 2020, the juvenile court admitted into the evidence the Department's reports. Mother testified that the children had

never witnessed any physical altercations between her and father. She said she had completed online classes for parenting and for domestic violence victims and that she learned that domestic violence is harmful to both her and the children. Mother further testified that she had obtained a restraining order against father that she intended to enforce.

On cross-examination, mother admitted two incidents of domestic violence with father during the past year but could only recall the February 2020 incident. She denied that any physical altercations with father occurred in October 2019 or May 2020.

After hearing argument from the parties, the juvenile court sustained the allegations of the petition[2] and found that domestic

---

[2]     The sustained allegations under section 300, subdivisions (a) and (b) state: "The children [R.A.] and [M.B.]'s mother . . . and the mother's male companion, Michael [G.], father of the child [M.B.], have a history of engaging in escalating verbal and physical violent altercations in the child[ren]'s presence. On 2/11/20, the . . . father struck the mother's face multiple times with both hands in the child [M.B.]'s presence, inflicting swelling and bruising to [mother's] left eye lid. The . . . father forcefully pushed the mother into a street with vehicular traffic where mother narrowly miss[ed] being struck by a moving vehicle, causing the mother to sustain abrasions to her elbow and swelling to her left ankle. The . . . father forcefully grabbed the mother's neck and pinned her against a wall, casing the mother to have difficulty breathing. The mother struck the . . . father multiple times in an attempt to break through his grip. On 10/18/19, the . . . father grabbed a bat and began to hit the mother in the face several times in the child [M.B.]'s presence. On prior occasions, the . . . father assaulted the mother. The . . . father threatened to kill the mother. The . . . father has a criminal history of convictions of Battery and Inflicting Corporal Injury Spouse/Cohabitant. The mother failed to protect the

9

violence between mother and father, and mother's failure to protect the children, placed the children at risk of serious physical harm. The court found mother's testimony not to be credible, noting inconsistencies in her testimony about the frequency of incidents of domestic violence and the children's presence during those incidents. The juvenile court further found that mother's participation in four hours of domestic violence counseling and four hours of parenting, but no individual counseling, was insufficient in light of the history and severity of domestic violence.

The juvenile court declared R.A. and M.B. to be dependent children and removed them from mother's custody. The court released R.A. to Timothy and ordered M.B to be suitably placed. Mother was accorded monitored visits and ordered to participate in individual counseling to address case issues, a domestic violence program with credit given for the completed classes, and a psychiatric evaluation.

This appeal followed.

---

children in that the mother allowed the . . . father to frequent the children's home including overnights and allowed him to have unlimited access to the children. The . . . father's violent conduct against the mother and the mother's failure to protect the children endanger the children's physical health and safety and place the children at risk of serious physical harm, damage, danger and failure to protect."

## DISCUSSION

### I.    Jurisdiction

#### A.    *Applicable law and standard of review*

Section 300, subdivision (a) authorizes juvenile court jurisdiction over a child when the child has suffered, or there is a substantial risk the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian.

Section 300, subdivision (b) authorizes the dependency court to assume jurisdiction over a child when the child has suffered or is at a substantial risk of suffering serious physical harm as a result of the parent's failure or inability to adequately supervise or protect the child.

"Although 'the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection.  [Citations.]  A parent's past conduct is a good predictor of future behavior."  (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

"'In reviewing a challenge to the sufficiency of the evidence supporting the [juvenile court's] jurisdictional findings . . . , we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."  (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)  "We do not reweigh the evidence or exercise independent judgment, but

11

merely determine if there are sufficient facts to support the findings of the trial court.""" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

### B. *Substantial evidence supports the jurisdictional findings*

Substantial evidence supports the juvenile court's jurisdictional findings. The record contains evidence of three separate incidents of severe domestic violence by father against mother. On February 11, 2020, father pinned mother against a wall and strangled her for two to three minutes, making it difficult for her to breathe. He then struck mother in the face three to four times and pushed her forcefully into the street where she narrowly missed being struck by a passing vehicle. Mother suffered swelling and a contusion on her left eye, swelling and a contusion on her left ankle, and abrasions on her elbow. Responding police officers and the maternal grandmother confirmed that M.B. was present during this incident.

On October 18, 2019, father used a bat to repeatedly strike mother in the face. He then threatened to kill her. R.A. was present during this incident. R.A. later reported that mother and father fight "with their bodies."

On May 13, 2020, one month after the children were detained, mother vandalized father's car, and father used a bat to hit mother on her leg and on her hand. Father fled after mother screamed and called 911. Mother suffered a contusion to her hand and pain in her leg.

Substantial evidence also supports the juvenile court's finding that mother failed to protect the children from father's violent behavior. Despite repeated instances of domestic violence with father that resulted in law enforcement intervention,

mother continued to have contact with father and allowed him to stay overnight in the home.  Mother denied any domestic violence, notwithstanding the overwhelming evidence to the contrary.  "A parent's denial of domestic violence increases the risk of it recurring." (*In re V.L.* (2020) 54 Cal.App.5th 147, 156; accord, *In re A.F.* (2016) 3 Cal.App.5th 283, 293 [denial a relevant factor when determining whether persons are likely to modify their behavior without court supervision].)

The evidence described above is sufficient to support the trial court's finding that R.A. and M.B. were children described under section 300, subdivisions (a) and (b).  That the children suffered no actual harm as a result of domestic violence between mother and father did not preclude the juvenile court's assumption of jurisdiction.  The court need not wait until the children are harmed before taking action to protect them.  (*In re Heather A., supra*, 52 Cal.App.4th at pp. 194-196.) Domestic violence in the home places a child at risk of encountering violence and suffering serious physical harm as a result.  (*Id.* at p. 194.)  The record shows that M.B., a child of tender years who required special medical care, was in a stroller nearby when father attacked mother on February 11, 2020.  R.A. was present during an October 2019 incident when father used a bat to repeatedly strike mother in the face and then threatened to kill her.

*In re J.N.* (2010) 181 Cal.App.4th 1010, on which mother relies, is distinguishable.  That case involved a single incident of endangering conduct by the parents, who drove with the children while intoxicated, resulting in an accident that caused injuries to the children.  (*Id.* at pp. 1014-1018.)  There was no evidence that the parents were substance abusers, or that their parenting skills

13

or judgment were so materially deficient that they were unable to adequately supervise or protect the children. (*Id.* at p. 1026.) Here, in contrast, there were multiple incidents of domestic violence between mother and father, including one that occurred within a month after the children were detained. Mother repeatedly denied any domestic violence and continued to associate with father and to allow him into the home.

Substantial evidence supports the juvenile court's jurisdictional findings under section 300, subdivisions (a) and (b).

## II.     **Removal order**

To remove a child from a custodial parent, the juvenile court must find that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home." (§ 361, subd. (c)(1).) "'A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent.'" (*In re D.D.* (2019) 32 Cal.App.5th 985, 996.) We review the juvenile court's selection of a dispositional order for a minor under the substantial evidence standard. (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 145-146.)

The same evidence that supports the juvenile court's assumption of jurisdiction over the children also supports the dispositional order. The multiple domestic violence incidents between mother and father, three involving law enforcement response; mother's denial of the domestic violence; her continued contact with father after the children's detention, resulting in yet another domestic violence incident; and mother's failure to complete domestic violence, parenting, and individual counseling

14

programs approved by the Department provide ample support for the juvenile court's removal order.

## DISPOSITION

The orders establishing juvenile court jurisdiction over the children and removing them from mother's custody are affirmed.

_____, J.
CHAVEZ

We concur:

_____, P. J.
LUI

_____, J.
ASHMANN-GERST