Filed 3/18/24  In re Journee B. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re JOURNEE B., et al., Persons Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>VIVIAN B.,<br><br>     Defendant and Appellant. | B325829<br><br>(Los Angeles County Super. Ct. No. 22LJJP00357AB) |

APPEAL from an order of the Superior Court of Los Angeles County, Donald A. Buddle, Jr., Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————————

## INTRODUCTION

Vivian B. appeals from the juvenile court's disposition order removing her two-year-old son Royal. Vivian argues substantial evidence did not support the court's finding by clear and convincing evidence that returning Royal to Vivian would create a substantial danger to his physical health, safety, protection, or physical or emotional well-being. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 19, 2022 Vivian reported to law enforcement that her 11-year-old daughter Journee was missing. A sheriff's deputy found Journee, who said she ran away because Vivian asked her for her email password and, when Journee said she did not know it, Vivian became angry and hit Journee with a cell phone charger cord. Journee had scabs and abrasions on her arm and leg "consistent with . . . being struck by a thin cable." The deputy arrested Vivian on suspicion of child abuse, and the Los Angeles County Department of Children and Family Services took Journee and Royal into protective custody. Vivian denied Journee's allegations. She told a sheriff's detective "[t]hat eleven-year-old is fucking lying." The district attorney charged Vivian with child abuse under circumstances or conditions likely

to cause great bodily injury or death, in violation of Penal Code section 273a, subdivision (a).

At a combined jurisdiction and disposition hearing on December 6, 2022, the juvenile court sustained six counts under Welfare and Institutions Code section 300, subdivisions (a), (b), and (j).[1] The court found: (1) Vivian physically abused Journee, endangering her physical health, safety, and well-being and placing Journee and Royal at risk of serious physical harm; (2) Vivian had a history of engaging in violent altercations with her partner, Rayshon S., in the children's home, and Vivian's failure to protect the children from Rayshon endangered Journee's and Royal's physical health and safety and placed them at risk of serious physical harm; (3) Vivian's current abuse of marijuana rendered her incapable of providing regular care to Journee and Royal; and (4) Vivian medically neglected Journee, endangering her physical health and safety and placing Journee and Royal at risk of serious physical harm.

At disposition the court removed Journee and Royal, finding "by clear and convincing evidence that there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the children" if they were returned to Vivian. The court ordered Vivian to participate in domestic violence counseling, individual counseling, and anger management and parenting classes, and to undergo drug testing. The court ordered monitored visitation. At the request of counsel for the children, the court ordered a psychological evaluation of

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

3

Vivian.  Vivian timely appealed from the court's jurisdiction findings and disposition orders.[2]

## DISCUSSION

A. *Applicable Law and Standard of Review*

Section 361, subdivision (c), provides:  "A dependent child shall not be taken from the physical custody of his or her parents . . . unless the juvenile court finds clear and convincing evidence" there "is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  (See *In re M.D.* (2023) 93 Cal.App.5th 836, 856; *In re I.R.* (2021) 61 Cal.App.5th 510, 520.)

"We review a dispositional order removing a child from a parent for substantial evidence, "'keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.'"  [Citation.]

---

[2]     In her notice of appeal, Vivian stated she was appealing from the juvenile court's December 6, 2022 jurisdiction findings and disposition orders.  Because in her brief Vivian addresses only the removal order, she has abandoned any challenge to the court's jurisdiction findings and other orders.  (See *In re M.B.* (2022) 80 Cal.App.5th 617, 620, fn. 1.)  In addition, we granted a motion by the Department to dismiss Vivian's appeal from the order removing Journee because Vivian in her brief does not challenge the juvenile court's findings or orders regarding Journee.

4

'[A]ppellate review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands.' [Citation.] In applying this standard of review, 'the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' [Citation.] We view the record in the light most favorable to the prevailing party and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*In re M.V.* (2022) 78 Cal.App.5th 944, 960; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.) The appellant has the burden to show """there is no evidence of a sufficiently substantial nature"" to support the dispositional removal order." (*In re L.O.* (2021) 67 Cal.App.5th 227, 245; see *In re E.E.* (2020) 49 Cal.App.5th 195, 206.)

B.     *Substantial Evidence Supported the Juvenile Court's Order Removing Royal from Vivian*

Substantial evidence supported the juvenile court's finding by clear and convincing evidence that returning Royal to Vivian would create a substantial danger to his physical health, safety, protection, or physical or emotional well-being. The evidence showed Vivian physically abused Journee. Journee told a nurse practitioner who examined her that Vivian hit her "about every month." Journee stated that during the August 2022 incident that led to Vivian's arrest, Vivian hit Journee with a cell phone cord, a broom handle, and a pole, dragged Journee by the hair, and told her to stay in a closet. Journee said that Vivian later

5

opened the closet door and threatened to use a taser on her unless she revealed her email password. Marks on Journee's arm and leg appeared to have been caused by a thin cord or cable. Journee told the social worker she left home without permission at least five times because she feared Vivian would harm her. She also said Vivian called her a "hoe" and accused her of "always lying." Journee stated she did not want to live with Vivian because she was afraid Vivian would hurt her and "say someone else did it."[3]

Vivian refused to take any responsibility for harming Journee. Vivian denied hitting Journee and said the marks on her body were caused by jumping rope and sleeping in a bed with a metal frame. Vivian said Journee ran away and falsely accused Vivian of hitting her because Journee was angry Vivian took her phone away as punishment for not doing chores.

There was also evidence Vivian was indifferent to Journee's emotional well-being. Vivian complained to law enforcement and to the social worker that Journee had become rebellious after she was sexually assaulted by a 13-year-old cousin and that she was always talking on the phone to boys about sex. Vivian told the sheriff's detective that "Journee put her in jail," that Journee was "manipulative," and that Vivian did not trust her. When Journee was 10 years old, Vivian told a school counselor that Journee had attempted suicide. Vivian told a social worker Journee was "not

---

[3] Vivian had a history of domestic violence with Rayshon, including as the perpetrator and as the victim. Four months before the Department filed the petition, Vivian shot Rayshon in the back of his head with a BB gun. Vivian denied that she used a BB gun, but stated that she hit Rayshon with a pocketknife after he poured a beverage on her and that she was arrested.

suicidal," but had tried to kill herself because she was embarrassed about stealing a cell phone.

Vivian's pattern of volatile, erratic, and belligerent behavior also supported the court's finding removal was necessary. When the detective interviewed Vivian at the sheriff's station, she "continuously interrupted" him, yelled at him, and cursed at him. The detective stated: "Toward the end of the interview Vivian became extremely belligerent and angry, showing what appeared to be an extremely volatile temper." The social worker reported that Vivian spoke "sporadically amidst her erratic behavior of screaming and yelling." The social worker ended the interview when Vivian appeared to be hyperventilating.

At a monitored visit with Royal at the Department's office, Vivian yelled at a Department "parent partner" and walked with Royal toward the door "as though she was going to leave with him but was stopped by security." After Vivian calmed down and the visit ended, Vivian's father (who was Royal's caregiver) called the social worker and said Vivian was at his house kicking the door and beating on the windows. The social worker could hear Vivian yelling in the background. The same day, Vivian sent the social worker a rude, profanity-laced text message suggesting Vivian had a relationship with the social worker's husband.

During another visit with Royal, Vivian got into an argument with her father at her father's home. While Vivian's father spoke on the phone with his doctor, Vivian yelled at him because she suspected he was talking to someone about Royal. When Vivian appeared to be leaving with Royal, Vivian's father blocked her, told her the visit was over because Vivian was agitated and cursing in front of Royal, and called law

enforcement. He told the social worker he was no longer willing to have Vivian visit Royal in his home.

Even when appearing in juvenile court, Vivian was unable to control her temper. At the arraignment hearing, Vivian interrupted and repeatedly stated, "I want to talk." And at the jurisdiction and disposition hearing, Vivian interrupted while the court was making its findings, and she said, "Shit. This is stupid." Addressing the bench officer (using his first name), she stated: "I'm not doing that. Y'all out here fooling for a check, for a fucking check. Y'all doing all that. And I got—presented all the evidence in your face, Donald. You bold as hell. You bogus as fuck. You know that's wrong. You know it." After the bailiff removed Vivian, she could be heard yelling outside the courtroom.

Vivian argues that, even if the juvenile court did not err in removing Journee, there was insufficient evidence that returning Royal to Vivian would create a substantial danger to him because "Royal was differently situated from Journee." Vivian contends the "significant hardship" Journee had experienced damaged her relationship with Vivian. In contrast, Vivian argues, Royal was just a baby, and Vivian had never physically disciplined, abused, or neglected him. She also points to evidence she behaved appropriately with Royal at a monitored visit, where she sang to Royal and Royal smiled at her.

While Vivian may not yet have physically or emotionally harmed Royal, the court could reasonably infer Royal was at substantial risk of danger, given Vivian's history of physically abusing Journee and Vivian's explosive temper. (See *In re M.D.*, *supra*, 93 Cal.App.5th at pp. 856-857 [the "'minor need not have been actually harmed before removal is appropriate'"]; *In re L.O.*,

*supra*, 67 Cal.App.5th at p. 245 [the "''court may consider a parent's past conduct as well as present circumstances''"]; *In re D.B.* (2018) 26 Cal.App.5th 320, 328 ["The focus of the statute is on averting harm to the child"]; *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["A parent's past conduct is a good predictor of future behavior."].) The juvenile court could also reasonably conclude that, because Vivian failed to take responsibility for inappropriately physically disciplining Journee, she would use the same methods of discipline on Royal when he was older. (See *M.D.*, at pp. 857-858 ["A fact finder could reasonably conclude, based on the evidence of [the father's] habitual parenting practices, coupled with his ongoing denial and lack of insight, that it was highly probable returning [the child] to his care put her at risk of physical danger."]; *In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["In light of [the] mother's failure to recognize the risks to which she was exposing the minor, there was no reason to believe the conditions would not persist should the minor remain in her home."]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"].)

Vivian also contends that, at the time of the jurisdiction and disposition hearing, she had completed an online parenting course where, she testified, she learned that parenting required "a lot of patience and communication, no yelling." But Vivian's angry outburst at the same hearing undermined her assertion she had learned how to communicate without yelling. Nor was there evidence Vivian was willing to work on becoming a better parent. When the court ordered services for Vivian (which included parenting and anger management classes), Vivian stated: "I ain't doing none of my services. If my kids can't come home, I ain't doing it."

Finally, citing *In re Jasmine G.* (2000) 82 Cal.App.4th 282, Vivian argues a court may not remove a child based on a parent's "hostility" about the allegations in a petition. In that case the juvenile court removed a 15-year-old child after her parents, who were "'law-abiding citizens' with no alcohol or drug dependencies and no prior encounters with the juvenile dependency system," used corporal punishment. (*Id.* at p. 285.) The court in *Jasmine G.* reversed the removal order, concluding substantial evidence did not support the juvenile court's finding because the parents "expressed remorse for having used corporal punishment" and attended parenting classes and therapy sessions to improve their parenting skills. In addition, the child wanted to return home, and her therapist stated it was "totally safe to return the child." (*Id.* at pp. 288-289.) The court in *Jasmine G.* held the juvenile court erred by relying on, among other things, "the subjective belief of the social worker that the parents 'lack[ed] understanding of their responsibility and their roles in the [corporal punishment] incident'" and the parents' "'lack of cooperativeness and the hostility' perceived by the social worker." (*Id.* at pp. 289-290.)

*In re Jasmine G.* is readily distinguishable. Unlike the parents in that case, Vivian did not admit she physically disciplined her child, did not promise to refrain from using corporal punishment, and did not complete her case plan. To the contrary, Vivian denied physically abusing Journee (despite the physical evidence she did), was indifferent to Journee's emotional well-being, and demonstrated volatile, angry behavior toward Journee, Vivian's father, law enforcement, Department employees, and the juvenile court judge. Substantial evidence

10

supported the juvenile court's finding by clear and convincing evidence it was not safe to return Royal to Vivian.

## DISPOSITION

The juvenile court's order removing Royal is affirmed.



SEGAL, Acting P. J.


We concur:



FEUER, J.



MARTINEZ, J.

11