Filed 8/25/16  Certified for Publication 9/13/16

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| In re A.F., a Person Coming Under the Juvenile Court Law. | C079918 |
| | (Super. Ct. No. JD235902) |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| CARRIE F., | |
| Defendant and Appellant. | |

Carrie F., mother of minor A.F., appeals from the juvenile court's orders declaring the minor to be a dependent of the court and removing him from parental custody.  (Welf. & Inst. Code, § 360, 361, 395.)[1]  She contends the jurisdictional findings and removal

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

orders were not supported by substantial evidence. We conclude that there is substantial evidence to support the juvenile court's findings and orders. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father have shared custody of eight-year-old minor A.F. Both parents have a history of heroin addiction and both are on a methadone opiate replacement program.

On March 14, 2015, Sacramento Child Protective Services (CPS) received an emergency response referral stating that mother's live-in boyfriend was deceased in the home due to a probable drug overdose. The night before, the minor had observed the boyfriend acting as if he was eating white pills from an orange container, and then showing off his muscles. The next morning, the minor woke to find foam coming from the boyfriend's mouth. The minor was scared and told his mother, who confirmed for the minor that the boyfriend was dead.

When the social worker from the Sacramento County Department of Health and Human Services (DHHS) responded to the residence, she discovered that mother and the minor resided in the garage (although the minor sometimes slept in the house). The social worker observed that the garage had five large trash bags, filled primarily with empty beer cans, strewn on the floor. The minor attributed most of the beer cans to his uncle, who lived in the home and drank heavily. Mother said she drank two beers a week; the minor reported that mother drank beer weekly.

The social worker also observed mother's prescribed liquid methadone was in a brown paper bag and placed on top of a two-foot-tall storage bin in the garage. Mother told the social worker that she usually hid her medication behind a curtain in the garage and the minor knew not to touch it. Mother also reported that her boyfriend was bipolar and kept his prescribed Depakote and Clonazapine on top of the television in the

2

garage—about five feet above the ground.  The minor stated he knew his mother took methadone and he recognized the paper bag containing the methadone from a photograph of the garage.

A protective custody warrant was issued providing for temporary removal of the minor from parental custody.  The social worker told father that there was a safety plan in place and that the minor was to remain in the placement until his home could be assessed.  Father agreed not to remove the minor from the temporary placement and to meet with the social worker the next day.  Nonetheless, later that day, father attempted to pick the minor up from school.  When father met with the social worker the next day, he claimed he had only gone to the school to see the minor, not to pick him up.  Father stated he was angry to discover the minor was living in the garage, was concerned that the minor had access to mother's methadone, and would like to file for full custody of the minor.  He agreed to a safety plan that the minor was not to be unsupervised with mother and was not to go to the mother's home.  Father agreed to a drug test and tested positive for marijuana and benzodiazepines (from his prescribed Alprazolam).

Two weeks later, on April 2, 2015, DHHS received a call from father's methadone counselor, Terry Davidson.  Davidson stated that father had been in earlier that day, confused and disoriented.  Father believed someone had come in his home and stolen his freshly filled medications (Seroquel, Cymbalta, Alprazolam, and methadone).  Father appeared to be sedated.  Davidson reported that father had come into the office and appeared manic in the past—which usually happens when father takes himself off of his bipolar medication (Cymbalta).  Father has bipolar disorder, intense depression, and audio hallucinations.  And father was also being treated with methadone for opiate addiction.

The social worker went to father's home to check on the minor but father was disoriented and unable tell her where the minor was located.  He stated that someone had

3

stolen his medications and helicopters were flying over his home. He appeared disheveled, and had bloodshot eyes and an unsteady gait. Father subsequently told the social worker he was overwhelmed and the minor was crying for his mother, so he let mother pick up the minor. He was unable to provide the social worker with mother's contact information and provided his own number, instead of mother's, for a contact number. Father explained that he had not slept in three days because of stress and does not take his medications because they make him groggy.

Shortly thereafter, social workers located the minor at mother's house, playing at the neighbor's home. Mother's breath smelled strongly of an alcoholic beverage and she showed obvious signs of intoxication, including slurred speech, bloodshot watery eyes, and an unsteady gait. She announced that she had " 'rescued [the minor] from the father's care which he is way worse than I am.' " She claimed she did not know about the safety plan and that there was no reason the minor could not stay with her. The paternal aunt came to pick up the minor from mother's home. The aunt drove up and asked mother the address of where the minor was playing. Mother was so intoxicated, she did not notice it was her sister-in-law who was asking for the directions.

The social worker spoke with both parents a few days later. Mother acknowledged that the minor should not have been unsupervised in her care and in her home. When asked why she violated the safety plan, she said, " 'Because he is my child.' " Mother said she is looking to move in with father to " 'stabilize' " her situation and was looking for a job. She was asked to drug test but she said she could not test because she had a job interview.

Father told the social worker that he had a manic episode on April 2, 2015, and had messed up. He said he " 'lost [his] mind for a sec,' " but that the agreement he made with mother was that the minor would be at a friend's house, not at mother's house. Davidson told the social worker that, on April 2, 2015, father had tested positive for his

4

prescribed medications. Davidson had not previously seen father in the sedated state he was in on April 2, 2015, and believed it to be an isolated mental episode caused by lack of sleep, stress, and medications.

DHHS filed an amended section 300 petition alleging that the minor comes within section 300, subdivision (b) in that he was at substantial risk of harm due to his parents' mental illness or substance abuse, as follows: (1) the b-1 allegation states that mother has a substance abuse problem that impairs her judgment and ability to adequately care for the minor; (2) the b-2 allegation states that mother provided the minor with inadequate shelter by leaving her methadone and psychiatric medications unlocked and within reach of the minor and by having the minor live amongst piles of beer cans; (3) the b-3 allegation states mother has a mental illness that impairs her judgment and ability to care for the minor; (4) the b-4 allegation states that father has been diagnosed with bipolar disorder and was prescribed medication, which he was not taking as directed by his treating physician, causing behavioral symptoms that place the minor at risk; and (5) the b-5 allegation states that father, who was diagnosed with bipolar disorder and who was noncompliant with his medications, failed to protect the minor by allowing him to have unsupervised contact with mother, whom he knew to have substance abuse issues and was not permitted unsupervised visits.

Mother testified at the jurisdictional hearing. Mother stated that she keeps her liquid methadone and psychiatric medication in a shoebox on the back of a garage shelf that is approximately six feet high. She did not have them in a locked box and did not talk to the minor about the methadone, but she did advise the minor that pills are dangerous and are not candy. She had taken the methadone down from the shelf the day her boyfriend was found dead to see if her boyfriend had tampered with it. Mother also stated that the five trash bags in the garage living quarters were filled with water and soda bottles, as well as beer cans, and they were meant for recycling.

5

The social worker's report reflected that mother had admitted to being intoxicated on March 14 and 15, 2015. The maternal grandmother reported that mother was intoxicated on or around April 2, 2015. The paternal aunt also believed that, based on mother's behavior, mother was intoxicated on April 2, 2015. Both the minor and the maternal grandmother reported that mother drinks once or twice a week. The paternal aunt and uncle stated that, based on statements from family members, they believe mother may have a drinking problem. Mother was asked to test for ETOH/alcohol twice a week, beginning on April 7, 2015. On May 1, 2015, it was reported mother had already missed several tests.

During her testimony, mother acknowledged that she was instructed not to drink alcohol at all while taking methadone because it was dangerous and possibly lethal. She was also instructed not to drink alcohol while taking her psychiatric medication because it was dangerous. Mother further acknowledged that she knew that it would be problematic to be using alcohol while being evaluated by CPS in this case, if she wanted to regain custody of the minor. Nonetheless, mother admitted that she continues to drink alcohol and drank as recently as four days before the hearing. She denied, however, that she drank weekly or had consumed any alcohol on April 2, 2015. Mother maintained that she does not have a problem with alcohol. She also maintained that, while mixing alcohol and methadone may affect a person's judgment or demeanor, it does not affect her because she does not use the alcohol heavily enough to have it do so.

The juvenile court found mother was not following the directions of her physicians by continuing to drink alcohol while taking methadone and her psychiatric medication. The court further found that as a result mother's honesty, memory, and judgment were negatively affected. The juvenile court concluded that mother's failure to follow the directions of her physician regarding her medications had affected her judgment and caused her to store her medication in a place accessible to the minor, to allow the minor

6

to live with beer cans covering the floor, and to become extremely intoxicated while the minor was in her care. The juvenile court also found that placement of the minor out of mother's care was necessary because mother was continuing to combine methadone and alcohol, and was in denial about the serious consequences of doing so.

## DISCUSSION

**1.0     Jurisdiction**

Mother claims the order adjudging the minor a dependent of the juvenile court must be set aside because the juvenile court's jurisdictional findings were not supported by substantial evidence. We disagree.

"[B]efore courts may exercise jurisdiction under section 300, subdivision (b) there must be evidence 'indicating the [minor] is exposed to a substantial risk of serious physical harm or illness.' " (*In re Janet T.* (2001) 93 Cal.App.4th 377, 388, quoting *In re Rocco M.* (1991) 1 Cal.App.4th 814, 823.)

The purpose of section 300 is to protect children from parental acts or omissions that place them at a substantial risk of suffering serious physical harm or illness. (§§ 300, subd. (b), 300.2.) Although there must be a present risk of harm to the minor, the juvenile court may consider past events to determine whether the child is presently in need of juvenile court protection. (*In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169.) The California Supreme Court has observed that, depending upon the circumstances, a "past failure [can be] predictive of the future." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 424.)

Our review of the sufficiency of the evidence is limited to whether the judgment or order is supported by substantial evidence. "Issues of fact and credibility are questions for the trial court and not the reviewing court. The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence,

7

contradicted or uncontradicted, which will support the conclusion reached by the trier of fact." (*In re Christina T.* (1986) 184 Cal.App.3d 630, 638-639.)

" 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.' [Citation.] However, we may also exercise our discretion to reach the merits of a challenge to any jurisdictional finding when the finding may be prejudicial to the appellant . . . ." (*In re D.P.* (2014) 225 Cal.App.4th 898, 902.)

The jurisdictional finding (in paragraph b-4 of the petition) that father's mental illness is not being properly managed, resulting in lethargy, disorientation and paranoia, and thereby placing the minor at risk, was supported by substantial evidence. On April 2, 2015, father was in such a state of impairment and lethargy (described by the minor as father's " 'drunk sleep mode' " caused by father's pills) that he was unable to take care of the minor. In fact, father became so disoriented that he violated the safety plan he knew was in place for the minor's protection. The minor reported that these episodes occurred randomly. This evidence is sufficient to support the jurisdictional finding.

Mother requests that, should this court conclude, as we do, that there was sufficient evidence to support jurisdictional findings with respect to father's conduct, we exercise our discretion to address her challenge to the jurisdictional allegations pertaining to her. She contends the jurisdictional findings that she is an offending parent may have a potential impact on future proceedings in this case, and they formed the basis for the removal orders, which are also challenged on appeal. Because the jurisdictional findings regarding mother's conduct also form the basis for the removal orders, we will exercise our discretion to address her challenge to the court's jurisdictional findings based on her conduct. Nonetheless, if one of the three jurisdictional bases relative to mother's conduct

8

is supported by substantial evidence, the juvenile court's jurisdictional finding must be affirmed regardless of whether either of the other alleged grounds for jurisdiction is supported by the evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

Here, there is substantial evidence to support the juvenile court's findings relative to mother's conduct, as well as father's. The petition alleged, in paragraph b-1, that the minor was at substantial risk of suffering serious physical harm as a result of mother's substance abuse problem. Mother was addicted to heroin for approximately eight years and has been on a methadone opiate replacement program for another eight years. Although she has been instructed not to consume alcohol while taking methadone, as it can be extremely dangerous or even lethal, mother has continued to consume alcohol on a weekly basis. Moreover, she continued to use alcohol up to four days before the hearing, even though she was being tested and she knew a positive test would negatively impact the proceedings.

Mother also admitted she knew the combination of alcohol and methadone could affect her judgment, yet she continued to combine use of the two—claiming she does not drink enough to have it change her demeanor. Mother, however, was observed to be extremely intoxicated on April 2, 2015—the day she took the minor from father in violation of the safety plan. She was slurring and staggering, and did not even recognize her sister-in-law when she asked for directions to the house where the minor was playing. Nonetheless, mother continues to deny she was intoxicated at the time, and continues to deny she has any problem with alcohol.

Mother also continues to deny that her substance abuse places the minor at risk. But as the juvenile court found, the substance abuse affects her judgment and places the minor at risk. For example, mother showed poor judgment on April 2, 2015, when she picked the minor up from father's house in violation of the safety plan. Thereafter, she showed poor judgment, and placed the minor at risk, by becoming extremely intoxicated

9

while the minor was in her care.  Mother also showed poor judgment, placing the minor at risk, in storing her methadone in a place accessible to the minor.[2]  And mother shows poor judgment in continuing to use alcohol and methadone at the same time, against medical instruction.  And while mother argues that none of this poor judgment is the result of her substance abuse, the juvenile court reasonably concluded to the contrary.

Mother attempts to analogize her circumstances to those in *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*), wherein the court found a father's use of legally obtained medical marijuana, "without more," was not substance abuse and did not place the minor at risk.  Mother's circumstances, however, are nearly as divergent as possible from those of the father in *Drake M.*  Indeed, the fact that mother obtains her substances legally is virtually the only similarity.

Unlike mother's substance abuse here, there was no evidence in *Drake M.* that the father was using a lethal combination of drugs, or using his drugs in a manner contrary to medical advice.  In *Drake M.*, the father never used the medical marijuana around the minor, and did not use it if he would be in the minor's presence within four hours of use. (*Drake M.*, *supra*, 211 Cal.App.4th at pp. 760-761.)  In contrast, mother drank alcohol (while also using methadone) in the minor's presence and used the substances in a

---

[2] The juvenile court found that mother failed to secure her methadone and psychiatric medications in a manner and place not accessible to the minor—which was also a basis for jurisdiction as alleged in paragraph b-2 of the petition.  Substantial evidence supported that finding.  Although mother had been taking methadone for eight years, she still had not obtained a lock box to store her medication.  Instead, she claimed to have told the minor that pills are not candy and kept her liquid methadone and pills in a shoebox on a shelf approximately six feet high.  The minor, however, reported that mother kept her medication in a brown paper bag on top of the television.  The social worker had also observed mother's methadone to be in a brown paper bag within the minor's reach.  The juvenile court discredited mother's testimony that the medication was generally kept where the minor could not access it and also noted that, in any event, six feet high is not inaccessible to an eight-year-old child.  It further noted that simply instructing a minor not to take a medication was insufficient to assure the minor's safety.

manner which affected her judgment while the minor was in her care.  The father in *Drake M.* kept his medical marijuana in a locked tool box on a shelf in a detached garage, out of reach of the 14-month-old minor.  (*Id*. at pp. 761, 767.)  Here, mother did not have a lock box and kept her methadone in a place the eight-year-old minor knew about and to which he had access.  Thus, unlike *Drake M.*, where there was no evidence of any " 'specific, defined risk of harm,' " mother was abusing the substances and using them in a manner that affected her judgment and placed the minor at risk.  (*Id*. at p. 769.)

In sum, we conclude that substantial evidence supports the juvenile court's exercise of jurisdiction based on mother's conduct.

**2.0    Removal**

Mother also contends there is insufficient evidence that the minor would be at substantial risk of detriment if returned to her care.  In an argument similar to that made against jurisdiction, she argues her use of alcohol in conjunction with methadone does not place the minor at risk.  Again, we disagree.[3]

To support an order removing a child from parental custody, the court must find clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  (§ 361, subd. (c)(1); see *In re Heather A*. (1996) 52 Cal.App.4th 183, 193.)  The court also must "make a determination as to whether reasonable efforts were

---

[3]  Mother also argues that her storage of methadone and psychiatric drugs in a place accessible to the minor, as well as her bipolar disorder, were insufficient to support removal of the minor.  Since we find mother's substance abuse sufficient to support removal, we need not discuss the additional grounds for removal.

11

made to prevent or to eliminate the need for removal of the minor" and "state the facts on which the decision to remove the minor is based." (§ 361, subd. (d).)

" 'The jurisdictional findings are prima facie evidence that the child cannot safely remain in the home. [Citation.]' [Citation.] ' "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]' [Citation.] We review a dispositional order removing a child from parental custody for substantial evidence." (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126.)

Here, substantial evidence supports the juvenile court's order for removal of the minor. The court had before it evidence that mother failed to appreciate that she needed to secure her methadone so that the minor could not access it. Mother also failed to appreciate the serious, and possibly fatal, consequences of using alcohol and methadone together. Indeed, mother continued to use both substances, along with her bipolar medication (for which alcohol was also contraindicated), as recently as four days before the hearing. And mother continues to argue that the use of the alcohol with methadone does not affect her judgment or pose a risk to the minor. "[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision." (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044.) In light of mother's failure to recognize the risks to which she was exposing the minor, there was no reason to believe the conditions would not persist should the minor remain in her home.

Finally, mother contends there were other reasonable means to protect the minor without removal. She argues the minor could have been adequately protected with unannounced visits to ensure her methadone was not accessible to the minor and she was not under the influence of alcohol.

12

Unannounced visits can only assess the situation and mother's sobriety at the time of the visit. Substance abuse testing can only detect use after the fact—which would be after mother had already placed the minor at risk again. Given mother's apparent inability to refrain from alcohol use despite being tested and knowing its use would negatively affect these proceedings, coupled with her refusal to acknowledge her substance abuse and its potential effect to her judgment and on the minor, there was no way to guarantee the minor's physical health, well-being, and protection while living with mother.

We conclude that substantial evidence supports the dispositional order of removal.

## DISPOSITION

The juvenile court's orders and judgment are affirmed.


                                                         BUTZ          , J.


We concur:


      BLEASE        , Acting P. J.


      RENNER        , J.

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(Sacramento)**

**----**

| | |
|---|---|
| In re A.F., a Person Coming Under the Juvenile Court Law. | C079918 |
| | (Super. Ct. No. JD235902) |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| Plaintiff and Respondent, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| v. | [NO CHANGE IN JUDGMENT] |
| CARRIE F., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Doris L. Shockley, Judge. Affirmed.

Robyn Truitt Drivon, County Counsel, Traci F. Lee, Assistant County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Respondent.

Karriem Jamaal Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

1

THE COURT:

The opinion in the above-entitled matter filed on August 25, 2016, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in full in the Official Reports and it is so ordered. There is no change in judgment. (**_CERTIFIED FOR PUBLICATION._**)

FOR THE COURT:


       BLEASE       , Acting P. J.


       BUTZ       , J.


       RENNER       , J.