Filed 12/2/20  In re Jayden G. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re Jayden G., a Person Coming Under the Juvenile Court Law. | B303873 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP07021A) |
| Plaintiff and Respondent, | |
| v. | |
| SANDY G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sabina A. Helton, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

We affirm the juvenile court's order removing a child from his mother's custody.

I

Sandy G. and Jonathan M. had a son named Jayden born in April of 2018. The mother and the father are not married but lived together in a place shared with Jayden's parental grandfather and parental uncle.

The mother had witnessed domestic violence as a child.

In her relationship with the father, the mother repeatedly perpetrated domestic violence on him—repeatedly in the presence of their son.

One incident involved the mother striking the father many times and pulling him off the bed.

Another incident was on March 26, 2019. The mother got on top of the father and struck him several times with closed fists. She also brandished a knife. This was inside their apartment. Their son was in the apartment at the time.

Another incident was on October 5, 2019. The father pushed the mother. The mother hit the father's face and body. Then she hit him with a candlestick holder. She again brandished a knife. Her son watched her attack his father.

Police arrested the mother for intimate partner battery. She was incarcerated but released within days when the charges were dropped.

The Department of Children and Family Services learned of the October 5, 2019 episode.

On October 21, 2019, the father told a social worker he was filing for a restraining order against the mother. He said the

mother had verbally and physically abused him for the last two years. He had not reported her abuse because he feared her.

On October 24, 2019, the mother moved out of the apartment in response to the father's restraining order against her.

The paternal grandfather reported seeing the mother hit the father 15 or 20 times. This grandfather had videotaped some events.

The Department filed a petition on behalf of the son on October 30, 2019. Both parents appeared for a detention hearing on October 31, 2019. The court released the child to the father with monitored visits by the mother.

On November 12, 2019, the court held a hearing about the father's request for a temporary restraining order. The court granted re-issuance of the order.

On December 27, 2019, the father announced he would let the restraining order lapse in favor of a mutual stay-away order. The court ordered the mother and father to stay 100 yards away from each other.

On December 31, 2019, the juvenile court sustained a petition on behalf of the son and removed him from the mother's custody. The son's attorney supported the Department's petition.

At the same hearing, the court took up the matter of disposition. County counsel and the child's counsel again joined forces. Both attorneys argued for placing the child in the father's home. The child's counsel underlined that both parents continued to deny the domestic violence.

The court expressed concerns about the young age of the child and the fact only two months had elapsed since detention. The court set a three-month rather than a six-month review "to

see if we can do a return to home of mother." The court removed the child from the mother's custody and ordered the father not to monitor the mother's visits.

The mother appealed. Neither the father nor the child has appealed.

II

We state the pertinent legal principles.

If a juvenile court has sustained its jurisdiction over a child, the court must decide where the child will live while under court supervision. The dispositional hearing is for this purpose. (*In re N.M.* (2011) 197 Cal.App.4th 159, 169–170.)

The Welfare and Institutions Code regulates when the juvenile court may take children from the physical custody of the parent. The statute requires clear and convincing evidence. The juvenile court must determine there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the child from the parent's physical custody. (Welf. & Inst. Code, § 361, subd. (c)(1).)

The parties agree our standard of review is for substantial evidence.

Our duty is to determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by the clear and convincing evidence standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005, 1009.) We do not reweigh the evidence. (*Id.* at p. 1008.)

III

Substantial evidence supported the court's removal order, which we affirm.

On appeal, the mother does not challenge the jurisdictional ruling. She contests neither her violent abuse of the father nor her persistent denial of her own physical abuse.

The mother's argument is limited: she contends there was no evidence her son would be exposed to danger in her custody, because she was violent only towards the father and not towards her son. The mother contends the couple's plan was to embark on peaceful coparenting and not to try to reconcile, and so this plan eliminated the prospect of further violence.

On this record, the juvenile court was entitled to conclude the mother had two problems: a violence problem, and a denial problem. These two problems created a substantial danger to her son's safety.

First, the mother's violence problem was she had resorted to violence repeatedly, without apparent concern for its effect on her son. The mother consistently was the aggressor. Her level of violence was significant. She struck with closed fists. She beat the father with a candlestick holder. She threatened the father with a kitchen knife. What is past is often prologue. (Cf. Evid. Code, § 1109 [past acts of domestic violence admissible in criminal prosecution for domestic violence].)

Second, the mother's denial problem was that she denied her violence problem. This suggested she lacked insight, and created an inference she lacked resolve to change her behavior. (See *In re A.F.* (2016) 3 Cal.App.5th 283, 293 [denial is a common factor for determining whether people are likely to change their behavior].)

5

Mother cites the *Anthony* case, but that holding goes the wrong way for her:  that court *affirmed* the juvenile court's removal order.  (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 354.) We do the same.

The mother can petition the court to revise these arrangements in the future.  She will strengthen her case if she maintains a record of nonviolent conduct and can demonstrate she has fully acknowledged her violent past and the risks it poses to her impressionable young son.

## DISPOSITION

We affirm the order.


WILEY, J.


WE CONCUR:



BIGELOW, P. J.



STRATTON, J.

6