Filed 5/15/24  In re J.M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.M., et al., Persons Coming Under Juvenile Court Law. | B329645 |
| _____ | (Los Angeles County Super. Ct. No. 23CCJP00562A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| J.M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Nancy A. Ramirez, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

J.M. (mother) appeals the juvenile court's order exerting jurisdiction over her son, its dispositional order removing her daughter from her custody, and its finding of no reason to believe that the daughter was an "Indian child" within the meaning of the Indian Child and Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). We decline to address the merits of mother's challenge to the juvenile court's removal order and ICWA finding, which are moot issues in light of the daughter's return to mother's care.[1] We affirm the juvenile court's order exerting jurisdiction over the son.

## FACTS PROCEDURAL BACKGROUND

Mother has two children at issue in this appeal—son (born 2008), and daughter (born 2012). Each has a different father.

Mother and daughter's father (father) have been involved in two prior dependency proceedings due to their domestic violence, mother's alcohol abuse, and father's use of methamphetamine. In each of those prior proceedings, daughter was released to mother's custody.

Son has lived with his father (nonoffending) at all relevant times consistent with a custody order granting him sole physical custody with visits for mother. Although a court had ordered mother not to bring daughter's father to mother's visits with son, mother disregarded that instruction, resulting in the requirement that a professional monitor be present for visits. Mother has called the police on multiple occasions to make false reports that son was suicidal and home alone and that his father was not feeding him. She has also called the police when son "did not respond to her messages." Mother sometimes sends son "long

---

[1] We grant mother's request for judicial notice of the juvenile court's minute order dated April 15, 2024.

messages speaking negatively about his father," and he reported participating in visits with mother because "he wants to avoid issues with [her]."

In December 2022, mother struck daughter's mouth. In the past, mother has also struck daughter with sandals and belts, pushed her to the ground, and caused bruises to her back. Daughter reported that mother is "mean to her for no reason" and "hits her often."

In early January 2023, mother repeatedly punched father's face and hit him with a car, all in daughter's presence (although daughter did not see the car hit father).

On February 14, 2023, the Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert jurisdiction over then 14-year-old son and 10-year-old daughter based on allegations that mother and father have a history of engaging in domestic violence in daughter's presence and mother physically abused daughter, rendering jurisdiction appropriate under Welfare and Institutions Code section 300, subdivisions (a), (b), and, as to son, (j).

At the detention hearing on February 15, 2023, the juvenile court ordered both children detained from mother and father, with mother to have visits with each child three times per week. Son remained where he had been, with his father. Daughter was initially placed with son's father, but was placed with paternal aunt a few days later.

When the Department interviewed mother on March 9, 2023, mother expressed concern that the Department was only asking about daughter, and not son—who mother claimed was "struggling psychologically." Mother reported that "she wanted to keep [son] on the case because she wanted to reunify with him

3

since she was already going to complete court orders." Mother denied having a history of domestic violence with father, stating they had never had any incidents. She also reported not knowing why the Department was involved with her family. And she denied ever hitting daughter, or hitting father's face and striking him with her car on January 3, 2023.

After the combined jurisdiction and disposition hearing on April 13, 2023, the juvenile court sustained the allegations,[2] removed daughter from both parents, ordered that son remain in his father's custody, and terminated jurisdiction over son upon the juvenile court's receipt of the juvenile custody order (filed April 18, 2023). The court ordered monitored visits for mother and father with daughter, and monitored visits with son for mother, to be monitored by a professional monitor at mother's expense. The court also ordered reunification services for mother, including domestic violence for perpetrators and parenting classes.

Mother filed a timely notice of appeal.

### DISCUSSION

Mother argues that the juvenile court erred in exerting jurisdiction over son, in removing daughter from her custody, and in finding no reason to believe that ICWA applied to daughter. We decline to consider the latter two issues, which are moot in view of daughter's return to mother's care.

Mother's jurisdictional challenge also appears to be moot given that the court terminated jurisdiction over son almost as soon as it found such jurisdiction, and mother has not pointed to any legal or practical consequences that are capable of redress.

---

[2] The juvenile court sustained some of the allegations as amended, but those amendments are not pertinent here.

4

(*In re D.P.* (2023) 14 Cal.5th 266, 277.)  We nonetheless exercise our discretion to reach the merits of mother's challenge, particularly given that the Department did not raise mootness in its respondent's brief.  (*Id.* at p. 282.)  We review a juvenile court's finding of dependency jurisdiction for substantial evidence, asking whether the record—when viewed as a whole and drawing all inferences in support of the court's finding—contains " ' "sufficient facts to support [that] finding." ' "  (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

Mother argues the juvenile court erred in exerting jurisdiction over son because son "was unaware of the circumstances of this case," lived with his father, and was neither physically abused nor exposed to domestic violence.  Under subdivision (j) of section 300,[3] the juvenile court may exercise jurisdiction over a child if:  "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions.  The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."  (§ 300, subd, (j).)  Subdivision (j) of section 300 " '*does not* state that its application is limited to the risk that the child will be abused or neglected *as defined in the same subdivision* that describes the abuse or neglect of the sibling.' "  (*In re I.J., supra,* 56 Cal.4th at p. 774.)  Thus, subdivision (j) may be sustained if

[3]     All undesignated statutory references are to the Welfare and Institutions Code.

5

the sibling of an abused child is at risk of abuse or neglect as set forth in subdivision (i), which provides: "The child has been subjected to an act or acts of cruelty by the parent . . . ." (§ 300, subd. (i).)

Mother does not challenge any of the jurisdictional findings as they concern daughter, including its finding that mother and father's history of domestic violence and mother's physical abuse of daughter "endanger[] [daughter's] physical health and safety." Substantial evidence also supports the juvenile court's exercise of jurisdiction over son. The record shows a certain unpredictability in mother's behavior—she hit father with her car because she was upset at him for "parking in the wrong spot." Daughter reported that mother was "mean to her for no reason" and "hits her randomly." Daughter also explained that on one occasion when she "was joking around with mother," mother "became upset and . . . slapped her on the mouth." What is more, mother has refused to recognize her problematic behavior. She has denied ever hitting father or daughter, stated she does not know why the Department is involved with her family, and explained that she "does not need to participate in any services because she and . . . father get along well." (See *In re A.F.* (2016) 3 Cal.App.5th 283, 293 [denial is a relevant factor for determining whether a person is likely to modify behavior without court supervision].)

Although son has resided with his father at all relevant times, suggesting that son is not necessarily in grave danger of physical harm, jurisdiction under section 300 subdivision (j) is appropriate if son is at risk of being subjected to "acts of cruelty" by his mother within the meaning of section 300, subdivision (i). (*In re I.J., supra*, 56 Cal.4th at p. 774 [subdivision (j) does not

6

confine risk that the child will be abused or neglected to the same subdivision that describes the abuse or neglect of the sibling].) The Legislature did not define "acts of cruelty" "due to the myriad forms such conduct may take." (*In re N.R.* (2023) 15 Cal.5th 520, 548.)

On multiple occasions, mother has called the police to make false reports about son's wellbeing. As recently as October 2022, mother called the police to falsely report that son was suicidal and home alone. Mother sometimes sends son long and "inappropriate" text messages speaking negatively about son's father. Mother's unpredictability, her physical abuse of daughter and violence against father, and her harmful behavior of making false police reports concerning son and sending him inappropriate texts, together comprise a substantial basis for finding that son is at risk of being subjected to "an act of cruelty" by mother. (See *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015 [finding act of cruelty does not require proof that parent intended harm].)

Because substantial evidence supports the juvenile court's exercise of jurisdiction over son under subdivision (j) of section 300, we decline to address whether the evidence also supports jurisdiction under subdivisions (a) and (b). (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 45 [we may affirm the juvenile court's exertion of jurisdiction if substantial evidence supports any one of the statutory bases alleged in the petition].)[4]

---

[4]    It is also worth noting that mother told the Department on March 9, 2023, that she was worried about son because he was "struggling psychologically," and that "she wanted to keep [him] in the case because she wanted to reunify with him since she was already going to complete court orders."

## *DISPOSITION*

We affirm the juvenile court's order exerting jurisdiction over son.


LEE, J.*

WE CONCUR:


MOOR, Acting P. J.


KIM, J.

---

\*       Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.