Filed 1/16/25  In re E.T. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re E.T. et al., Persons Coming Under the Juvenile Court Law. | B333517 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>S.J.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. Nos. 23CCJP02120A–B) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Pete R. Navarro, Commissioner.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

S.J. (Father), the father of minors E.T. and V.J., appeals from jurisdictional findings and dispositional order, declaring his children dependents of the juvenile court under Welfare and Institutions Code[1] section 300, subdivisions (b) and (j). Father contends the evidence was insufficient to support each of the jurisdictional findings related to him. We conclude there was substantial evidence to support the findings that Father failed to protect the children from the risk of harm posed by Mother's substance abuse, and on that basis, affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    Section 300 petition**

Father and K.T. (Mother) are the parents of two girls: E.T., born in June 2020, and V.J., born in June 2023. Mother also has four older children from prior relationships. Mother's four older children previously were dependents of the juvenile court due to Mother's substance abuse, and Mother failed to reunify with each of them.

In June 2023, the Los Angeles County Department of Children and Family Services (DCFS) received a referral that both Mother and V.J. tested positive for cocaine and marijuana at the child's birth. Mother informed DCFS that she initially went to another hospital to give birth, but left after she had a positive test for cocaine and marijuana. She then went to the hospital where she delivered V.J., and had a second positive test for the same drugs. She admitted to using marijuana during her pregnancy with V.J., but claimed she had not used cocaine in the

---

[1]    Unless otherwise stated, all further undesignated statutory references are to the Welfare and Institutions Code.

2

past 10 years. Mother reported that she and Father had separate residences, but they often spent the night at each other's homes.

In his initial interview with DCFS, Father stated he knew Mother smoked marijuana because he saw her using the drug. He denied ever seeing Mother use other substances, and claimed he did not know how she could have used cocaine because he had "been with her every day." Father also reported he received disability benefits because he had been diagnosed with schizophrenia. According to Father, he took medication for his condition, but he was not receiving ongoing treatment, and he only requested medication when he felt that he needed it. Father stated that, when he had an "episode," he visited the Augustus Hawkins emergency room, and the last time he did so was in late 2022.

On June 27, 2023, DCFS filed a dependency petition for E.T. and V.J. under section 300, subdivisions (b) and (j). The petition alleged the children were at substantial risk of harm due to Mother's substance abuse and Father's mental health issues. It also alleged Father knew of Mother's substance abuse, and Mother knew of Father's mental health issues, and they each failed to protect the children from the risk of harm posed by the other parent.

On June 28, 2023, the juvenile court detained the children from Mother and released them to Father subject to conditions. Father was required to submit to a psychiatric evaluation within two weeks and take any recommended medication, to participate in therapy, parenting classes, and family preservation services, to cooperate with DCFS and all court orders, and to sign a medical release for records pertaining to his most recent psychiatric hospitalization. Mother was granted monitored visitation with

3

the children on the condition that she not reside in or visit at Father's home, and that Father not act as the monitor for her visits.

## II. Children's detention from Father

In July 2023, DCFS reported it was concerned the parents were not being truthful about Mother's contact with the children. On one occasion, the case social worker saw Father walking up the stairs toward Mother's apartment. While Mother was not home, the children were inside unattended. Father claimed he took the children to Mother's apartment to get clothes for them, and only left them alone while he locked his car. On another occasion, the social worker observed Father's car parked a short distance from Mother's apartment. When no one answered the door, the social worker called Mother. Although Mother stated she was not home at the time, the social worker saw her walking out of her apartment. Mother then claimed she was on her way to visit the children at the babysitter's house. The social worker followed Mother in her car, but the children were not there when the social worker arrived. DCFS further noted that both parents were difficult to reach and had to be contacted several times before they would respond.

On July 5, 2023, Father received a psychiatric assessment at Exodus. However, the documentation provided by Exodus only stated that Father was diagnosed with an unspecified adjustment disorder, and that he left without seeing a discharge planner. The case social worker informed Father that his documentation was not sufficient, and offered to drive him to the Department of Mental Health (DMH) office where he previously obtained services so that he could set up a new assessment. In response, Father became agitated, and yelled that he did not need to go to

DMH because Exodus "already said he is not crazy." On July 13, 2023, Father returned to Exodus for another assessment. Although Father later provided DCFS with a document regarding that assessment, it was not legible.

In July 2023, DCFS received Father's medical records from DMH. According to those records, Father began receiving mental health services in 2014, and went back to DMH to reestablish services in 2016. At that time, Father stated he had been diagnosed with schizophrenia, and was having visual and auditory hallucinations. He saw "black figures," heard "voices talking," and felt paranoid "like something is out to get [him]." In March 2021, Father returned to DMH after being off his medication because he was depressed and having increased hallucinations. He was advised to take his prescribed psychotropic medication and to attend all scheduled appointments. Father participated in services over the next several months, but then stopped attending his appointments and answering his phone. In March 2021, after repeated efforts to reengage Father in services, DMH notified him that his case was being closed due to inactivity.

At a hearing held on July 19, 2023, the juvenile court detained E.T. and V.J. from Father. DCFS placed the children together in a foster home. As the social worker was transporting the children to the foster home, E.T. disclosed that she would sleep at Mother's home at night with Mother, Father, and her sister, V.J.

III.  **Jurisdictional and dispositional report**

For its August 2023 jurisdictional and dispositional report, DCFS interviewed Father and Mother about the allegations in the section 300 petition. Regarding the allegations related to

Mother's substance abuse and Father's failure to protect, Father denied any knowledge of drug use by Mother. He stated he did not believe that either V.J. or E.T. tested positive for drugs at birth. He also denied ever seeing Mother use marijuana, cocaine, or any other drugs. Father claimed he first learned that Mother used marijuana when she tested positive for the drug at V.J.'s birth, and she promised him at that time that she would not use drugs again. Father also expressed that he did not do anything wrong, and that "if it was not for [M]other using substances he would not be in this situation."

In her interview, Mother admitted she smoked marijuana during her pregnancies with E.T. and V.J., and both children tested positive for the drug at birth. Mother also admitted she tested positive for marijuana and cocaine at V.J.'s birth, but she continued to deny she used cocaine. Mother stated Father was aware that she smoked marijuana during her pregnancy with V.J., and he was upset that she did so. Father asked Mother about her marijuana use when she was pregnant, and she explained that she needed the drug to help her eat. DCFS reported that, since the children were detained from her, Mother continued to have some positive tests for marijuana and missed other drug tests.

With respect to the allegations related to Father's mental health issues and Mother's failure to protect, Father initially denied any mental health issues. At first, Father stated that his disability benefits were for asthma. He then claimed that he fabricated a mental health disorder to qualify for a housing program, and that he was given psychotropic medication as part of a clinical trial for which he was paid. Father later admitted he was diagnosed with depression in 2010 because he "was going

6

through a lot." He also disclosed that his doctor prescribed him medication, but he did not take it because he did not believe he needed it. In her interview, Mother denied knowledge of any mental health issues with Father.

## IV. Jurisdictional and dispositional hearings

On August 8, 2023, the juvenile court held the adjudication hearing on the section 300 petition. Both Mother's counsel and Father's counsel asked the court to dismiss the petition. Counsel for the children and counsel for DCFS joined in requesting the court sustain the petition as pled. The children's counsel noted that, based on the parents' admissions, Mother used marijuana during her pregnancy, Father was aware of Mother's marijuana use, and Father had been diagnosed with schizophrenia, but was not receiving ongoing treatment.

The court sustained an amended version of the petition. It sustained the allegations concerning Mother's substance abuse and Father's failure to protect the children under section 300, subdivisions (b) and (j). It also sustained the allegations concerning Father's mental health issues and Mother's failure to protect the children under section 300, subdivision (b). The court modified the language of the petition to state that Father's mental health issues "limited" his ability to provide regular care for the children, rather than rendered him incapable of doing so. The court continued the dispositional hearing to September 2023.

As of September 2023, Father was enrolled in therapy and a parenting class. Mother was enrolled in a drug treatment program and was testing negative for drugs, though she missed a few tests. Both parents were attending regular visitation with the children, and were appropriate and attentive during the visits.

7

On September 19, 2023, the juvenile court held the dispositional hearing for E.T. and V.J. After hearing the argument of counsel, the court declared both children dependents under section 300, subdivisions (b) and (j). The court removed the children from Father, and released them to Mother under the supervision of DCFS. The court ordered family maintenance services for Mother, and enhancement services for Father. Father's case plan required him to submit to a psychiatric evaluation and take all prescribed medication.

Father appealed from the juvenile court's jurisdictional findings and dispositional order.

## V.  Section 387 petition

On October 11, 2023, Mother failed to appear for an on-demand drug test. Then, on October 23, 2023, Mother had a positive test for cocaine and benzoylecgonine. Mother's drug treatment program reported that Mother also tested positive for cocaine, marijuana, and "benzos" on September 1, 2023. In response, Mother told DCFS she did not know how she had tested positive for drugs, and claimed she bought two "Xanax bars" off the street that may have contained other substances. Father stated he was shocked at the test results, and could not believe "this is happening again." He later told DCFS he did not think Mother was using drugs, but rather believed the testing site switched her results.

On October 27, 2023, DCFS filed a section 387 petition for E.T. and V.J. The petition alleged Mother had a history of substance abuse and was a current abuser of cocaine and other drugs, which rendered her incapable of providing the children with regular care and supervision.

8

On December 12, 2023, the court held the adjudication hearing on the section 387 petition. The court sustained the petition as pled, and removed the children from Mother. The court denied Father's request that the children be released to him, and ordered that the children be suitably placed by DCFS. The court granted both parents reunification services under the same case plans previously ordered.

Father also appealed from the juvenile court's suitable placement order.

## VI. Postappeal orders

Father requests this court take judicial notice of the juvenile court's orders from the six-month review hearing held during the pendency of this appeal. We grant Father's unopposed request. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) The orders show that, on June 24, 2024, the court terminated its suitable placement order and placed the children with Father.

## DISCUSSION

Although Father appealed the jurisdictional findings, dispositional order, and suitable placement order, he solely challenges the sufficiency of the evidence supporting the jurisdictional findings related to him. Father specifically contends the evidence was insufficient to support the findings that he failed to protect the children from Mother's substance abuse, and that his mental health issues placed the children at risk of serious physical harm. As explained below, we conclude substantial evidence supported the juvenile court's exercise of jurisdiction over the children based on Father's conduct.

## I. Justiciability of Father's appeal

We first address DCFS's argument that Father's appeal is not justiciable because the jurisdictional findings as to Mother

9

remain uncontested.  As our Supreme Court has observed, "the principle that '[d]ependency jurisdiction attaches to a child, not to his or her parent' [citation], means that ' "[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate" ' [citation].  Thus, where jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot."  (*In re D.P.* (2023) 14 Cal.5th 266, 283.)  Because Father does not challenge any of the jurisdictional findings based on Mother's conduct, the children will remain dependents of the juvenile court regardless of the outcome of Father's appeal.

Appellate courts nevertheless retain the discretion to address the merits of a moot appeal where the challenged jurisdictional finding " 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or ' "could have other consequences for [the appellant], beyond jurisdiction." ' "  (*In re D.P., supra,* 14 Cal.5th at p. 285.)  Here, the jurisdictional findings related to Father formed the basis for the juvenile court's original dispositional order removing the children from Father's custody.  While Father does not challenge that removal order, a jurisdictional finding based on his conduct could potentially impact Father in the current or future dependency proceedings.  We accordingly exercise our discretion to consider the merits of his appeal.

II.   **Sufficiency of the evidence supporting jurisdiction under section 300, subdivisions (b) and (j)**

A.   **Governing law**

Section 300, subdivision (b) provides, in relevant part, that a child comes within the jurisdiction of the juvenile court if the "child has suffered, or there is a substantial risk that the child

10

will suffer, serious physical harm or illness, as a result of . . . [¶] . . . [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child." (*Id.*, subd. (b)(1)(A).) A jurisdictional finding under section 300, subdivision (b)(1) has three elements:  " '(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' " (*In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561.) The court " 'may consider past events in deciding whether a child currently needs the court's protection.  [Citation.]  A parent's " '[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." ' " (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1048.)

Section 300, subdivision (j), authorizes jurisdiction if the "child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected."  A jurisdictional finding under section 300, subdivision (j), has two elements: "first, that the [child's] sibling has been abused or neglected, and second, that there is a substantial risk that the [child] will be abused or neglected." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 981.)  In determining whether the child is at substantial risk, the court must "consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative." (§ 300, subd. (j).)

We review challenges to the sufficiency of the evidence underlying jurisdictional findings for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  " ' "In making this

determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*Ibid.*)

### B.     Substantial evidence supported jurisdiction based on Father's failure to protect the children from Mother's substance abuse

In this case, there was substantial evidence to support the juvenile court's exercise of jurisdiction over E.T. and V.J. under section 300, subdivisions (b) and (j), based on Father's failure to protect the children from Mother's ongoing substance abuse.  The evidence showed Mother had a long history of abusing marijuana and other drugs, which resulted in her losing custody of her four older children in prior dependency proceedings.  With respect to her two children with Father, Mother admitted that she smoked marijuana during her pregnancies with E.T. and V.J., and as a result, each child tested positive for marijuana at birth.  Despite Mother's denials that she used any other drugs, both Mother and V.J. also tested positive for cocaine.  After the children were detained from her due to her substance abuse, Mother continued to have positive tests for marijuana while failing to appear for other drug tests.

The evidence also was sufficient to support a finding that Father was aware of Mother's substance abuse, but failed to protect the children from the risk of harm posed by Mother.  In her interview with DCFS, Mother admitted that Father knew she smoked marijuana during her pregnancy with V.J., and that she told him she needed the drug to help with her appetite.  In his initial interview with DCFS, Father also admitted that he knew

12

Mother smoked marijuana because he saw her doing so. After the children were detained, however, Father changed his story. He denied ever seeing Mother use marijuana or other drugs, and claimed that he first learned of her marijuana use when Mother tested positive for the drug at V.J.'s birth. Father further denied that either of his children had a positive drug test at birth. Even after DCFS informed him of V.J.'s test results, Father expressed that he did not believe the child was born with drugs in her system. " '[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.' " (*In re A.F.* (2016) 3 Cal.App.5th 283, 293.) Given Father's denials, the juvenile court reasonably could infer that Father was unwilling to recognize the seriousness of Mother's substance abuse problem and its impact on the children.

The evidence further supported the inference that, after the children were detained from Mother, Father allowed her to have unmonitored contact with them in violation of the juvenile court's order. There were two occasions where DCFS observed Father and/or his vehicle outside Mother's home. The children were alone inside the home during one such incident, and Mother appeared to lie to DCFS about their whereabouts during the other. In addition, after the children were released to Father on the condition that Mother not reside in the same home, E.T. told DCFS that she and V.J. would stay at Mother's home at night with both parents. The evidence also showed that, rather than take protective measures to ensure the children's safety, Father disclaimed any responsibility for DCFS's involvement with the family. Even after the children were detained from him, Father continued to express that he did nothing wrong, and that "if it was not for [M]other using substances he would not be in this

13

situation." On this record, the juvenile court reasonably could conclude that Father knew or should have known of Mother's substance abuse problem, and failed to adequately protect his children from the risk of harm.

Where, as here, " 'a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) Because there was substantial evidence supporting the juvenile court's exercise of jurisdiction based on Father's failure to protect the children from Mother, we need not consider whether jurisdiction also was proper based on Father's mental health issues.

### DISPOSITION

The juvenile court's jurisdictional findings are affirmed.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


GRIMES, J.


14