Filed 3/10/25  In re Amelia M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re Amelia M., et al.,<br><br>　　Minors Coming Under the Juvenile Court Law,<br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　Plaintiff and Respondent<br><br>v.<br><br>Gilberto M.,<br><br>　　Defendant and Appellant. | B337169<br>(Consolidated with B339889)<br><br>(Los Angeles County Super. Ct. No. 23CMJP00007A-B) |

APPEAL from an order of the Superior Court of Los Angeles County, Syna N. Dennis, Commissioner.  Affirmed.

1

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

\* \* \* \* \* \*

In this dependency appeal, Gilberto M. (father) challenges the juvenile court's order asserting dependency jurisdiction over two of his children. Substantial evidence supported the juvenile court's decision, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The family*

Father and C.T. (mother) were together for four years, and have two children—Amelia M. (born April 2019) and Areli M. (born August 2022).[1]

#### B. *Father engages in domestic violence*

On October 23, 2023, after mother and father had ended their romantic relationship, father stopped by mother's home where mother lived with Amelia and Areli. Father and mother got into a verbal argument. The argument escalated into physical violence when father pushed mother, choked her, punched her so hard she fell to the floor, and then repeatedly

---

[1] While father was in a relationship with mother, father was also married to another woman with whom he had already had three children. Those three children are subject to a separate dependency proceeding that is not part of this appeal.

2

slammed a door into her prone body.  When father picked up Amelia, mother got up, went to her car, and called 911; when father saw her on the phone, he mouthed the words, "You're dead" and pantomimed slitting her throat.  Both children were home during the incident, and Amelia was close enough to be able to describe the choking and punching.  Mother had redness on her neck, and bruising on her arms.

This was not father's first incident of domestic violence. Mother reported "several" prior instances of physical violence, and there was a prior referral for physical violence against the mother of his three other children.  Mother also reported that father would appear at her home unannounced to confront and accuse her of being in relationships with other men.

Father denied any and all domestic violence against mother, instead claiming that mother had punched *him*.

### C.  *Father camps out in front of mother's home while possessing drugs and drug paraphernalia*

Just five days after the domestic violence incident, father parked outside of mother's home for a period of time.  Mother called the police, as she had obtained an emergency protective order against father a few days earlier.  When the police arrived, they found a glass pipe and several bindles of methamphetamine in father's car and one in his pocket.  Father explained that he was selling drugs and belonged to the Compton Varrio Chicano street gang.  The police arrested father and served him with the

emergency protective order mother had secured a few days earlier.

## II. Procedural Background

### A. *Petition, adjudication, and disposition*

On December 14, 2023, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Amelia and Areli.  In the operative first amended petition, the Department alleged that (1) father's acts of domestic violence "place[] the children at risk of serious physical harm, damage, and danger" (thereby warranting the exercise of dependency jurisdiction under subdivisions (a) and (b)(1) of Welfare and Institutions Code section 300)[2]; and (2) father's possession of methamphetamine for sale created a "detrimental and endangering home environment" that also placed the children at risk (thereby warranting the exercise of dependency jurisdiction under subdivisions (a) and (b)(1) of section 300).[3]

The juvenile court held a combined jurisdictional and dispositional hearing on the first amended petition on April 25, 2024.  The court sustained the domestic violence and drug-related allegations under subdivision (b)(1) of section 300, but struck the subdivision (a) allegations.  The court removed the children from father's custody and placed them with mother; the court ordered the Department to provide father with enhancement services, including monitored visitation.

---

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3]     The amended petition also alleged, as to the domestic violence counts, that mother had failed to protect the children. The juvenile court did not sustain that allegation.

4

**B.** *Appeal of dispositional orders*

Father timely appealed the juvenile court's dispositional orders.

**C.** *Post-appeal events*

While father's appeal of the jurisdictional findings was pending, the juvenile court held a status review hearing under section 364 on July 25, 2024. At father's request, the court held a contested hearing on August 7, 2024, and ultimately terminated jurisdiction and issued an exit order declaring joint legal custody and sole physical custody to mother with monitored visitation, subject to the limits of an outstanding domestic violence protective order issued after the October 2023 incident.

**D.** *Appeal of exit orders*

Father filed a timely appeal of the exit orders.

**E.** *Consolidation of appeals*

We consolidated the two appeals.

## DISCUSSION

In this consolidated appeal, father argues that the juvenile court's jurisdictional findings are unsupported by the evidence, such that we must vacate those findings as well as the subsequent exit order. As a threshold matter, we conclude that the termination of dependency jurisdiction does not render father's challenge to the jurisdictional findings moot in this case because those findings laid the groundwork for the exit order, which changed the physical custody arrangement from joint to solely with mother; thus, vacating the findings would vacate the order and impact father's rights in this dependency matter. (*In re D.P.* (2023) 14 Cal.5th 266, 276-277.)[4]

---

[4] Although father is subject to a domestic violence protective order that also vests mother with sole legal custody of the

Section 300, subdivision (b) authorizes the exertion of dependency jurisdiction where a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" "[t]he failure or inability of the child's parent . . . to adequately supervise or protect the child." (§ 300, subd. (b)(1)(A).) Exposing a child to domestic violence can constitute a failure to protect a child from the risk of serious physical injury under this subdivision. (*In re L.O.* (2021) 67 Cal.App.5th 227, 238; *In re R.C.* (2012) 210 Cal.App.4th 930, 941.) We review the juvenile court's jurisdictional finding for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

Substantial evidence supports the juvenile court's finding that father engaged in domestic violence and, more to the point, that his conduct places the children at substantial risk of serious bodily injury. Contrary to what father asserts, the incident at the heart of this case was not an "isolated incident"; both mother and father's wife stated that father had previously engaged in physical violence against each of them. The risk of harm is exacerbated by father's repeated and flat denials of engaging in that violence. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision'"].) And although, as father notes, mother and father are no longer romantically involved, father would, prior to the incident, show up at mother's house unannounced and

---

children, that order only lasts for three years and, as a result, does not affect the impact of the exit order for the period that follows. To the extent there is any uncertainty on the mootness question, both parties urge us to exercise our discretion to reach the merits even if the case is moot.

demand to know who she was dating—and, even after the incident, continued to stalk mother by waiting outside of her house in a car. Father's preoccupation with mother is evidence that the risk of continued violence remains. (Accord, *In re R.C.* (2012) 210 Cal.App.4th 930, 944.)

Father offers three further arguments in resisting our conclusion. First, he discounts the statements of mother and his wife regarding prior incidents of domestic violence, asserting that there was "no record" of those incidents. But the testimony of a single witness may constitute substantial evidence. (*In re Marriage of Ficke* (2013) 217 Cal.App.4th 10, 27.) Second, father argues that the children were not at risk because neither child was injured while father was shoving, strangling and injuring mother. But it is undisputed that the children were home as the incident occurred and that the eldest child was close enough to describe father's conduct to others; more to the point, a juvenile court need not wait for a child to be injured before stepping in. (*In re T.V.* (2013) 217 Cal.App.4th 126, 134 ["Domestic violence impacts children even if they are not the ones being physically abused, 'because they see and hear the violence and the screaming'"].) Third, father argues that any risk has dissipated because he did not assault or batter mother in the six months between the incident and the jurisdictional hearing. But this ignores that father was subject to multiple protective orders prohibiting him from being near mother during most of this period. What is more, the severity of the October 2023 incident is not lessened by the fact it occurred six months earlier. (*In re John M.* (2013) 217 Cal.App.4th 410, 418-419 [incident one year before jurisdictional hearing is basis for risk finding].)

7

Because substantial evidence supports the juvenile court's findings on the domestic violence allegation, we need not assess whether substantial evidence also supports the drug-related allegation. (*I.J.*, *supra*, 56 Cal.4th at p. 773 [a reviewing court need not consider all statutory grounds for jurisdiction if at least one is supported by substantial evidence]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [same].)

## DISPOSITION

The dispositional and exit orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P.J.

HOFFSTADT


We concur:


_____, J.

BAKER


_____, J.

MOOR