Filed 2/13/26  In re R.L. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FIVE

| | |
|---|---|
| In re R.L. et al., <br><br> Minors Coming Under the Juvenile Court Law. <br> ———————————————— <br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> R.L., <br><br> Defendant and Appellant. | B345370 <br><br> (Los Angeles County Super. Ct. No. 24CCJP02943A-B) |

APPEAL from an order of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

After R.L. (father) molested his then-five-year-old daughter, the juvenile court exerted dependency jurisdiction over the daughter as well as father's then-eight-year-old son. Father urges that there was insufficient evidence to support jurisdiction over his son because father's longstanding history of sexual abuse against minors has thus far been directed only at girls and because father's conduct in touching his daughter's vagina was, in his opinion, "relatively minor." Neither argument is well taken, so we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**I. Facts**

**A.** *The family*

Father and D.M. (mother) met in 2015, got married, and divorced in 2019. They share two children together: (1) R.L., a boy born June 2016, and (2) C.L., a girl born September 2018.[1] In August 2023, the family court awarded father sole physical custody of R.L. and C.L.

---

[1] Mother and father each have other children from previous relationships. Those children are not parties to this dependency proceeding.

2

**B.** *Father sexually abuses C.L. in May 2024*

In May 2024, father went into the bathroom with C.L., closed the door, knelt on the floor next to C.L. after she got out of the shower, and put one of his hands on C.L's buttocks and the other on her vagina. As he did so, he asked "'does this feel good?'" and C.L. responded, "'that tickles.'"

Father's girlfriend at the time heard the interaction through the closed door, interrupted father by opening the door, and confronted him. Father responded by asking if she was "'jealous of a five-year old.'"

Father's girlfriend reported the incident to mother, who reported it to the police.

R.L. said that father had never touched him or exposed him to any sexual conduct.

**C.** *Father's history of sexual abuse of other victims*

Father's inappropriate touching of C.L. was just the latest incident in his years-long history of sexual misconduct that includes:[2]

-- Father "peeked" through a window to watch maternal aunt in the shower, exposed himself to her, and sent her pictures of his penis.

-- Father exposed himself to maternal grandmother, who was 94 years old and suffering from dementia.

-- In 2020, father climbed into bed with his then-11-year-old daughter (from another relationship) and fondled her private parts.

-- In March 2022, father peeked into his girlfriend's 18-year-old daughter's bedroom after she had gotten out of the shower.

---

[2] Father himself was sexually assaulted as a minor.

3

-- Because the girlfriend's daughter was "uncomfortable" around father, the girlfriend installed security cameras around the house. When the girlfriend was out of town, father lured the daughter into his bedroom where no cameras were installed. Father convinced the girlfriend's daughter to play with his virtual reality headset, and while her face was masked by the headset, father took photos under her loose shorts.

-- During his relationship with his girlfriend, father would masturbate and ejaculate on her body while she was sleeping despite her asking him to stop.

-- In June 2024, father requested towels while at a hotel room, answered the door in his underwear, grabbed the buttocks of the 16-year-old hotel employee who was delivering the towels, and then propositioned her for sex.

Although father occasionally attended support groups for sexual addiction, mother expressed concern over his "impulses to act on his sexual desire no matter who he touches or hurts."

## II. Procedural Background

### A. *The operative petition*

The Department filed a petition in September 2024 asking the juvenile court to exert jurisdiction over C.L. and R.L. based on father's sexual abuse of C.L. The Department filed the operative first amended petition in December 2024, which asked the juvenile court to exert jurisdiction over both children under subdivisions (b)(1), (d), and (j) of the Welfare and Institutions Code section 300 because father's "ongoing sexual misconduct and sexual abuse . . . endangers [C.L.'s] physical health and safety and places [C.L.] and the child's sibling, [R.L.], at risk of

4

serious physical harm, damage, danger and sexual abuse by father."[3]

Father denied the allegations, asserting that they were "'lies from a grieving'" ex-girlfriend "trying to make him look bad," that all the women in his life were "'conspiring against [him],'" and that C.L. was being "brainwashed" against him.

**B.    *Jurisdiction finding***

The juvenile court held a combined jurisdiction and disposition hearing over multiple days in February and March 2025.  Father moved to dismiss the amended petition,[4] either entirely or with respect to R.L.  The court sustained the amended petition, and removed the children from father.  The court found the multiple allegations of father's abuse "credible," "consistent," and "well supported."  While the court acknowledged that father had treated his son R.L. "differently" than his daughter C.L. and the "others he had preyed upon," the court nevertheless found R.L. was at risk based on "the pattern and rapidity of [father's] sexual predatory behavior" which had "continued[] largely unabated."  The court further found that father's "effectiveness in cloaking his conduct from detection" and the "brazenness of some of his actions" "raises concerns about how far [father is] prepared to push the envelope with [R.L.] present."

**C.    *Appeal***

Father timely appealed.

-----

[3]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[4]    Father relied on character reference letters, but the parties and the court questioned whether father generated the letters using artificial intelligence.

5

## DISCUSSION

Father does not challenge the juvenile court's finding that he sexually abused C.L. or the court's exertion of dependency jurisdiction on the basis of that abuse. Rather, father confines his attack to the exertion of jurisdiction over his son R.L., urging that it was improper because (1) his prior sexual conduct has thus far been directed only at elderly women, adult women, young women in their teens, and young girls, and (2) his conduct toward C.L. is "relatively minor" and "occurred one time only." We review a juvenile court's exertion of jurisdiction for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Substantial evidence supports the juvenile court's exertion of dependency jurisdiction over R.L. pursuant to subdivision (j) of section 300. As pertinent here, this subdivision empowers a juvenile court to exert jurisdiction over a child if (1) "[t]he child's sibling has been abused or neglected" and (2) "there is a substantial risk that the child will be abused or neglected . . .." (§ 300, subd. (j); *In re I.J.* (2013) 56 Cal.4th 766, 774 (*I.J.*) [subdivision (j) grants a juvenile court "'greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance'"].) Because father does not dispute that R.L.'s sibling was sexually abused, the sole issue is whether substantial evidence supports the juvenile court's finding that R.L. is at substantial risk of abuse or neglect. We conclude there is. In *In re I.J.*, our Supreme Court upheld the exercise of jurisdiction over a father's sons under subdivision (j) when the father sexually abused one of his daughters by placing his hand on her vagina and then penetrating it with his finger and then his penis, reasoning that this "serious" abuse of the daughter placed the

6

sons at risk because all the children were living in the same home and thus the sons "could easily have learned of or even interrupted the abuse" and because such abuse "'constitutes a fundamental betrayal of the appropriate relationship between the generations.'" (*I.J.*, at p. 778.) Here, father abused C.L. by placing his hand on her vagina while living in the same household where R.L. was also living, thereby creating a risk to R.L. comparable to that in *I.J.* What is more, father is firmly in denial that he touched C.L., a denial that is painstakingly unconvincing in light of his persistent and longstanding history of sexual aggression toward vulnerable victims, including children, the elderly, and persons who were unaware of his sexual conduct because it was surreptitious. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision'"].)

Father's arguments to the contrary are unconvincing. Father cites a number of cases that stand for the proposition that a parent's sexual abuse of children of one gender cannot support the exertion of jurisdiction over siblings of a different gender, but *I.J.*, *supra*, 56 Cal.4th 776 disapproved of those cases. Father's assertion that his conduct toward C.L. was "minor" and "one time" is meant to distinguish *I.J.*, which looked to the severity of the sexual abuse against one child in assessing risk to that child's siblings. (See *I.J.*, at p. 778 ["the more severe the type of sibling abuse, the lower the required probability of the child's experiencing such abuse to conclude the child is at a substantial risk of abuse or neglect"].) As explained above, father's abuse of C.L.—while not as egregious as the sexual abuse of the child in *I.J.* itself—was still "severe," occurred while R.L. might happen

7

upon it, was part of a longstanding history of impulsive sexual abuse, and remains conduct that father continues to deny. Given all of these considerations, substantial evidence supports a finding that R.L. was at risk of abuse or neglect, and hence that the exertion of dependency jurisdiction over him was appropriate.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
MOOR